No. 20,038.

FRANK E. GOLDY, AS BANK COMMISSIONER, *v.* GLENN E. GERBER, ET AL., INCORPORATORS OF WESTLAND INDUSTRIAL BANK.
(377 P. [2d] 111)

Decided December 10, 1962.    Rehearing denied January 7, 1963.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. FLOYD B. ENGEMAN, Assistant, for plaintiff in error.

Messrs. BARTHOLIC and BARTHOLIC, Messrs. CRANSTON and ARTHUR, for defendants in error.

*En Banc.*

Opinion by MR. JUSTICE HALL.

DEFENDANTS in error, a group of citizens, to whom we will refer as the applicants, applied for a charter to do business as an industrial bank in Lakewood, under the terms and conditions set forth in C.R.S. '53, 14-7-1, et seq. (1960 Perm. Supp.).

It has been well stated that:

"The banking business, because of its nature and its relation to the fiscal affairs of the people and the revenues of the state, is properly subject to regulation under the police power of the state." 9 C.J.S. 32, Banks and Banking, §5.

■ Under the police power, the state may enjoin its citizens from engaging in activities which adversely affect the safety, peace, good order, morals, comfort, or welfare of the public or community.

■ The legislature has set up several requirements that must be met by those seeking to engage in the industrial banking business. The paramount purpose of these requirements is to protect prospective depositors and other creditors from loss in their dealings with such bank. The legislature vested in the bank commissioner authority to investigate, conduct hearings and:

"Upon the receipt of the instruments above recited the bank commissioner shall investigate the facts, and after such hearing if he shall find that: Allowing the applicant to engage in such business will promote the convenience and advantage of the community in which the business of the applicant is to be conducted; and that the articles of incorporation and by-laws are in compliance with law, and its capital, surplus and undivided profits account will be in an amount not less than the minimum required, then the bank commissioner shall grant such charter." C.R.S. '53, 14-7-2 (3) (a) (1960 Perm. Supp.).

The bank commissioner made an investigation of the facts with reference to this application and conducted a hearing as provided by the statute and thereafter made his "FINDINGS, CONCLUSIONS AND ORDER DENYING CHARTER," wherein he found that applicants had met all of the above mentioned statutory requirements, except one, namely, that "Allowing the applicant to engage in such business will promote the convenience and advantage of the community in which the business of the applicant is to be conducted."

He then made further observations or findings as follows:

"4. Inasmuch as several of the proposed directors are engaged in both the commercial banking and finance business, in institutions within the same community, there is danger these conflicting interests might damage the proposed industrial bank or might work to the detriment of the existing commercial bank or finance business if this charter is granted.

"5. The applicant's projections of future volume of business and earnings of the proposed industrial bank are unrealistic based on the past performance of similar institutions.

"6. The actual community in which the applicant would conduct its business centers around a major support area running approximately from Sheridan Boulevard on the east, west along West Colfax for a distance of eight to ten miles. Within this support area there are presently two commercial banks, one industrial bank, sixteen finance companies and two savings and loan associations. Within a radius of six miles in all directions from the proposed location of the applicant's industrial bank are at least three additional commercial banks and numerous credit unions. A large number of the people in this community commute daily to places of employment within the City of Denver where other banks and financial institutions are available to take care of their needs.

"Because of his findings contained in paragraphs (4), (5) and (6) the Commissioner now finds that allowing the applicant to engage in the business of an industrial bank will not promote the convenience and advantage of the community in which the proposed business of the applicant is to be conducted and therefore the charter of the proposed Westland Industrial Bank is hereby denied."

We find nothing in the foregoing to warrant the conclusion that "allowing the applicant to engage in the

business of an industrial bank" *will* or *will not* "promote the convenience and advantage of the community in which the proposed business of the applicant is to be conducted."

An analysis of findings 4, 5 and 6, supra, fails to disclose anything therein to warrant the ultimate conclusion of the commissioner.

In paragraph 4, the commissioner observed that several proposed directors of applicant are engaged in commercial banking and finance business within the community and that these conflicting interests *"might* damage the proposed industrial bank or *might* work to the detriment of the existing commercial bank or finance business if this charter is granted." This observation falls far short of establishing any fact constituting a basis for precluding citizens from engaging in a lawful business. Here, the commissioner evinces no concern over the welfare and interest of the public, the depositors and creditors, but is concerned only with the welfare of the applicants and their competitors. Competitors, of course, welcome restrictions tending to eliminate competition. Understandably, competition *might* work to the detriment of those already in the field. It is equally probable, however, that competition *might* work to the advantage and convenience of the public who may benefit from the banking facilities proposed to be made available by applicants.

In paragraph 5, the commissioner opines that applicants' projections of future business are "unrealistic."

Nothing in paragraph 5 rises to the dignity of a finding. The commissioner's observation can be no more than a speculation upon the risks of the enterprise, having no relation to the convenience and advantage of the community.

Applicants admittedly are and were found to be experienced bankers and financiers. They have put up $120,000.00 of their own money as provided by law for

the protection of depositors and creditors, upon the strength of their own study of the prospects for success of the business upon which they desire to embark.

■ We find nothing in the law precluding one from engaging in the banking business because his estimates of future volume of business and earnings are unrealistic.

In paragraph 6, are findings that (1) there is already *one* industrial bank in the support area, two commercial banks, sixteen finance companies, and two savings and loan associations; (2) that there are three additional commercial banks and numerous credit unions within a radius of six miles of applicants' proposed location; and (3) that additional banking facilities are available in Denver.

This finding does not purport to determine whether the "support area" is adequately served by the one industrial bank; it does not purport to find that another industrial bank might "promote [or hinder] the convenience and advantage of the community."

In this finding there is nothing which can be used as the basis for granting or denying the application.

Apparently, the commissioner took the view that applicants must prove that their proposed venture will not only be successful, but will promote the convenience and advantage of the community.

■■ People engaging in the business of industrial banking, as well as other businesses, seek profits and personal gain. They have a right to go into the banking business unless it be made to appear that in so doing their activities will adversely affect the safety, peace, good order, morals, comfort, or welfare of the *people*. To prevent one from engaging in a lawful business it is necessary that there be proof and findings of failure to comply with the statutes or that a detriment to the public health, morals or welfare would follow issuance of the license. This record is devoid of any evidence

or even suggestion that applicants' proposed operations will adversely affect anyone other than competitors.

The following appeared and objected to the granting of the license:

(1) The Colorado Industrial Bankers Association.
(2) The North Denver Bank.
(3) The Beneficial Industrial Bank.
(4) Hawkins Finance Company.
(5) The Beneficial Management Corporation.
(6) The Jefferson County Bank.
(7) The First National Bank of Golden.

No doubt each was motivated by a desire to hold competition at a minimum. They represented their own private interests and cannot be considered as promoting the interest, convenience and advantage of the community.

On the other hand, in the record before us are nine separate petitions, signed by a total of more than one hundred "Merchants in the West Colfax area," in which they urge the granting of a charter to applicants and state that:

"A Banking Institution of this nature will be a vital asset to the Lakewood Area in developing new business as well as the servicing of existing business's by the creating of a lending and savings agency designed to provide specialized services for businesses and individuals heretofore not entirely available."

In addition, we find in the record letters from Chambers of Commerce of Arvada and East Jefferson County, stating that services to be rendered by an additional industrial bank are necessary and would be beneficial to the growing needs of the expanding population of the area to be served.

The judgment of the trial court ordering issuance of the charter is correct and is affirmed.

MR. JUSTICE SUTTON, MR. JUSTICE McWILLIAMS and MR. JUSTICE PRINGLE dissent.

MR. JUSTICE SUTTON dissenting:

The issue here is whether there is evidence in the record to support the findings of an administrative official duly authorized by statute to investigate, hold hearings and determine whether a license should issue.

Though I agree with the majority opinion that grounds four and five enumerated by the commissioner are invalid in law to justify a refusal to grant the license, such is not true of the sixth ground. In it the commissioner lists what the majority denotes as competitors but which businesses in fact, so the commissioner concluded by his findings, would prevent these applicants from promoting the convenience and advantage of the community in the public interest as required by the statute. The commissioner used the statutory language in his finding and it being supported by competent evidence I would affirm his action and reverse the learned trial court.

Mr. Justice McWilliams and Mr. Justice Pringle state that they concur in this dissent.