No. 22416.

BANKING BOARD OF THE STATE OF COLORADO; HARRY
BLOOM, AS CHAIRMAN OF THE BANKING BOARD OF THE
STATE OF COLORADO AND AS STATE BANK COMMISSIONER;
AND HARRY BLOOM, PIERPONT FULLER, GLEN B. CLARK,
E. L. BACON, I. K. HOYLE, H. E. McKEEVER AND ROBERT
T. HAVER, COMPRISING THE BANKING BOARD OF THE STATE
OF COLORADO *v.* TURNER INDUSTRIAL BANK.
(437 P.2d 531)

Decided February 19, 1968.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, A. FRANK VICK, JR., Assistant, for plaintiffs in error.

HELLERSTEIN and HELLERSTEIN, L. A. HELLERSTEIN, KENNETH L. KLEINSMITH, for defendant in error.

Benjamin F. Stapleton, Jr., M. O. Shivers, Jr., amicus curiae.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

We will refer to plaintiff in error Banking Board of the State of Colorado as the Board and to the defendant in error as applicant — a duly licensed and operating industrial bank which petitioned the Board for permission to convert to a full fledged banking operation pursuant to statute, C.R.S. 1963, 14-17-10.

This writ of error is directed to a district court judgment reversing the Board's action in denying applicant a state commercial bank charter.

After hearing the Board made specific findings:

"(1) that the requirements of Section 14-9-10 (1), Colorado Revised Statutes 1963, as amended, have been met, and

"(2) that the applicants have failed to sustain that burden of proof imposed upon them pursuant to Section 14-9-10 (3), Colorado Revised Statutes 1963, to wit:

"(a) the proposed bank will not serve a public need and advantage in the communities, community, or area of the community which the bank will serve, and

"(b) the volume of business in the communities, community, or area of the community which the proposed bank will serve is such that profitable operation of the bank may be reasonably projected."

The applicant sought review of the Board's order in the district court of La Plata County and obtained therein a favorable judgment reversing the Board's action. The court ordered the Board to issue applicant a commercial bank charter.

The Board is here seeking to reverse the district court's judgment and order, contending that there was a conflict in the evidence before it; that its findings are

supported by substantial evidence, and that the district court, and this court in like manner, are bound by the Board's determination.

■ We hold that the trial court properly reversed the Board's action. The court ruled — and we agree — that the decision of the Board was arbitrary and capricious and contrary to the manifest weight of the evidence. The showing made by applicant was such that as a matter of law the Board should have issued the requested charter.

■ Under the pertinent statute, C.R.S. 1963, 14-9-10 (3), the applicant has the burden of proving (a) that the proposed bank will serve a public need and advantage and (b) that the volume of business in the community which the proposed bank would serve is such that a profitable operation of the bank can reasonably be projected.

The Board determined "based on the applicant's demonstrated ability to operate a profitable industrial bank in the past, a somewhat profitable operation of the bank as a commercial institution could reasonably be anticipated in the future * * *" but found against the applicant on the criteria of "public need and advantage."

The sole question for our determination is:
DOES THE RECORD SUPPORT THE BOARD'S FINDING THAT THE NEW BANK WILL NOT SERVE A "PUBLIC NEED AND ADVANTAGE" IN THAT AREA?

■ We answer the question in the negative.

The evidence at the hearing consisted of:

1. Petitions circulated by the respective parties, 2700 in favor of conversion and 800 against;

2. Testimony by officers of the various banks and other interested individuals in favor of and against the application; and

3. An economic study of the area prepared by Dr. Eugene T. Halaas for the applicant and a similar study prepared by Dr. Ralph G. Riggenberg for the protestants.

Each of the experts testified at the hearing and were extensively cross-examined.

The protestants were the Burns National Bank and The First National Bank, the only two full service commercial banks in Durango. With the exception of a third bank which closed its doors at the time of the bank moratorium in the depression of the 1930's, there has not been a commercial bank chartered in Durango in 55 years. It appears from the general findings by the Board that its ruling was predicated on a concern with the effect a new commercial bank would have upon the existing institutions rather than with "the needs and advantages of the public." This may be gleaned from the Board's finding "that the existing commercial banks adequately accommodate the public," and from a further finding that the profitable operation which could be reasonably projected for the future of the applicant *"would be at the expense of existing financial institutions and would not be the result of unserved or growing needs in the community."*

In *Goldy v. Gerber*, 151 Colo. 180, 377 P.2d 111, with a statute involving an industrial bank charter under consideration, this court held that the purpose of a similar requirement, *i.e.*, a finding that the bank (industrial) "will promote the convenience and advantage of the community" is to protect prospective depositors and other creditors in their dealings with the bank and *not to protect competitors.*

The evidence which is manifestly contrary to the finding that there was no proof of the public need and advantage in the area may be summarized as follows:

The applicant was chartered as an industrial bank in 1955. Its 10-year growth which prompted the application in 1965 showed that deposits by savings customers increased from slightly less than $150,000 to approximately $3,000,000; that in eight years immediately preceding the hearing the volume of loans had grown from $640,000 to slightly over $2,600,000; that at

the time of the hearing before the Board in 1965 applicant had 1525 savings accounts and 1153 loan accounts. Applicant in only 10 years of operation had grown to be one of three of the largest industrial banks in Colorado serving La Plata County, four other adjacent counties, and with customers in New Mexico and Arizona, adjacent to Durango, and the Four Corners area.

The applicant's contention in requesting the charter was that it desired to provide a complete banking service to these many customers and to make available to them a checking account service, other types of loans which a commercial bank may service, and, in particular, desired for its depositors the federal deposit insurance which national and state banks can obtain but which the industrial banks cannot.

The trial court adequately analyzed the other evidence of growth in the community as follows: In the period from 1956 to 1965, the Durango Savings and Building Association has grown from just over $2,400,000 in deposits to greater than $6,850,000. The Bank of Ignacio has more than doubled its deposits since 1961, totaling $2,255,000 at the end of 1964. The two protestant banks, however, have shown a net growth of deposits between them from 1956 to 1965 of $450,000 on deposits of about $16,700,000. This is an increase of less than 3%.

Fort Lewis College moved from Hesperus to Durango in 1956, and since that time has shown steady and rapid growth. The student body has increased almost 300% since 1959, and at the time of the hearing before the Board had an enrollment of 1200. New buildings have been built and the faculty and administrative personnel have increased proportionally. The college provides a stable force in the economy which is unlikely to disappear. The trial court found — and we agree — that it is difficult to conceive how this college growth could fail to stimulate the economy of Durango and the surrounding area.

The Denver & Rio Grande Railroad began aggressively

to promote the line from Durango to Silverton, Colorado, as a tourist attraction. The result has been that the number of passengers annually using its facilities has increased from just under 24,000 in 1956 to over 65,000 in 1964. Purgatory, a new skiing facility, has been opened north of Durango, providing an excellent winter tourist attraction.

As a result of tourist activities, the number of motels in Durango has increased from 10 to 41 in less than a decade. The number of annual users of the facilities at San Juan National Forest near Durango during this period has increased nearly six times since 1956 to over 630,000 in 1964. The number of visitors to Mesa Verde National Park, 35 miles to the west of Durango, has more than doubled during this same period.

Durango is the second largest city on the Western Slope. The population of La Plata County has increased almost 35% from 14,880 in 1950 to an estimated 20,000 in 1965. The evidence introduced by the protestants showed that the estimated population growth from 1960 to 1965 was not nearly as rapid as for the 10 years prior thereto. Their evidence also showed that retail sales had declined between 1958 and 1963, although the evidence introduced by applicant on this point showed that retail sales had substantially increased. The protestants also pointed out that agriculture, mining, and manufacturing decreased in volume between 1950 and 1962, although not substantially in value.

The protestants now pay 3% interest on savings, but until shortly prior to the application for conversion, they had been paying 2½% interest. This is in comparison to 4% paid by the applicant and the Bank of Ignacio, the other commercial bank in the county, and 4.5% paid by the Durango Savings and Building Association.

There is no Colorado case defining the phrase "public need and advantage." The courts in other jurisdictions have made it clear, however, that the purpose

of similar clauses in their banking statutes is *not* to prevent new banks from entering the field, even though existing banks have been rendering adequate service, but rather to insure the existence of a healthy banking system. Too strict a monopoly in the banking field is as undesirable as having an excessive number of banks. In *Wall v. Fenner*, 76 S.D. 252, 76 N.W.2d 722, the court made the following cogent observation:

"* * * While the adequacy of existing banking facilities may be considered in the determination of public convenience and necessity it does not follow that because there are adequate banking facilities that public convenience and necessity justifying another bank cannot exist. If such were the case the statute would tend to deter competition and foster a monopoly."

See also: *Moran v. Nelson*, 322 Mich. 230, 33 N.W.2d 772; *Chimney Rock National Bank v. State Banking Board*, 376 S.W.2d 595 (Tex. Civ. App.).

█ In *Goldy v. Gerber, supra*, we stated a general policy with respect to the issuance of a charter by the State Banking Board for an industrial bank. We think that policy is also applicable to the case at bar. We said:

"People engaging in the business of industrial banking, as well as other businesses, seek profits and personal gain. They have a right to go into the banking business unless it be made to appear that in so doing their activities will adversely affect the safety, peace, good order, morals, comfort, or welfare of the *people*. To prevent one from engaging in a lawful business it is necessary that there be proof and findings of failure to comply with the statutes or that a detriment to the public health, morals or welfare would follow issuance of the license. This record is devoid of any evidence or even suggestion that applicants' proposed operations will adversely affect anyone other than competitors."

█ It is difficult to reconcile the evidence of the long-term economic growth in the Durango area, the rapid growth of banks other than protestants, both com-

mercial and industrial, with the adverse findings of the Board. The Board seems to have determined the "public need and advantage" to be synonymous with "so long as existing institutions are not affected by additional competition." As we have noted such construction is contrary to the law, for competition may benefit the public by causing protestant banks to review their policies, increase interest rates on deposits and even augment their service to the community in which they do business.

Applicant is admittedly operated by capable and experienced personnel. Applicant amply demonstrated that a complete banking service to its many customers through insured deposits and a checking service is needed, and that as a commercial bank it can continue to grow in the future.

The judgment is affirmed.

MR. JUSTICE KELLEY not participating.