No. 22315.

HARRY BLOOM, AS STATE BANK COMMISSIONER OF THE STATE OF COLORADO *v.* ROBERT COHEN, SIMON COHEN AND NORMAN E. BERMAN, AS INCORPORATORS OF FIRST INDUSTRIAL BANK OF ADAMS COUNTY.

(437 P.2d 344)

Decided February 19, 1968.

DUKE W. DUNBAR, ATTORNEY GENERAL, FRANK E. HICKEY, DEPUTY, A. FRANK VICK, ASSISTANT, for plaintiff in error.

EDISON & BERMAN, for defendants in error.

*En Banc.*

MR. JUSTICE MCWILLIAMS delivered the opinion of the Court.

THE defendants in error, Robert Cohen, Simon Cohen and Norman Berman, were plaintiffs in the trial court and will hereinafter be referred to either by individual name or collectively as the applicants. The plaintiff in error, Harry Bloom, the State Bank Commissioner, was the defendant in the trial court and he will hereinafter be referred to as the Commissioner.

Pursuant to the provisions of C.R.S. 1963, 14-17-1, et seq. the applicants applied to the Commissioner for a charter to do business as an industrial bank in Commerce City. After considerable delay the application came on for hearing before the Commissioner, at which time and place there were three witnesses called to offer evidence in support of the application. The three who

thus testified were the vice-president and general manager of a heavy equipment company with offices in Commerce City, the city treasurer who was also the superintendent of public works for Commerce City, and Robert Cohen, one of the applicants. At the hearing there were no protests whatsoever to the granting of a charter to these applicants to operate an industrial bank.

At the conclusion of the hearing the Commissioner took the matter under advisement and then some two months later entered a written order denying the application and refusing to issue the charter. Thereafter the applicant sought and obtained judicial review of this administrative decision. The trial judge upon his review of the record theretofore made before the Commissioner held that the several findings of the Commissioner were not supported by substantial evidence and he accordingly entered a judgment and order that the Commissioner grant the application and issue the charter. By writ of error the Commissioner now seeks reversal of the judgment thus entered.

The Commissioner based his order denying the application on three grounds:

1. that the experience and "general fitness" of Robert Cohen was not such as to command the confidence of the public in the operation of the proposed industrial bank or to warrant the finding that the proposed industrial bank would operate within the purpose and in accordance with the provisions of the Industrial Bank Act of the State of Colorado;

2. that to allow the applicants to engage in the industrial banking business in Commerce City would not promote the convenience and advantage of that community; and

3. that the applicants had failed to show that by permitting them to engage in the business of industrial banking, such would in fact promote the convenience and advantage of Commerce City.

Robert Cohen, who was to be the person in charge

of the day-to-day operation of the proposed industrial bank, has been on the metropolitan Denver scene for at least the past fifteen years, during which time he has served in a variety of capacities, such as the proprietor of jewelry store licensed as a pawn shop; a licensed real estate broker and multiline insurance agent; the manager of an insurance company; and for some thirteen years as the manager of a finance company. In this latter capacity Cohen was for many years licensed under both the Colorado Consumer Finance Act, C.R.S. 1963, 73-3-1, et seq., and the 1913 Money Lenders Act, C.R.S. 1963, 73-2-1.

Though the evidence in this regard is very sketchy, it would appear from the record before us that sometime in the past Cohen had at least a minor "run-in" with the Commissioner to the end that he was once ordered to stop making loans until a certain complaint was cleared up. Apparently this complaint was resolved satisfactorily. In any event, this we do know from the record: Cohen's money lenders license was *not* suspended as a result of this incident, and he thereafter was authorized by the Commissioner to resume the business of lending money to his needy clientele.

█ Apparently the Commissioner would base his derogatory finding as to the general "experience and fitness" of Cohen on this particular incident. This being the only evidence bearing on this point, and the matter having been resolved satisfactorily to the end that Cohen was authorized by the Commissioner to resume his money lending operation, we conclude that the record does not support the finding that the applicants in general, and Cohen in particular, were unfit to engage in the business of industrial banking.

█ Our review of the record also leads us to conclude that the several findings of the Commissioner as to "convenience and advantage" are not supported by the record. Counsel argues that the real test is *not* whether the findings of the Commissioner are supported

by the record, but whether the applicants sustained their burden of proof and affirmatively established their right to a charter. We need not here get engaged in any battle of semantics, as in our view in the instant case the applicants *did* sustain their burden of proof and, *a fortiori,* the record *does not* support the findings or decision of the Commissioner.

In a very real sense, resolution of the instant dispute is governed by *Goldy v. Gerber*, 151 Colo. 180, 377 P.2d 111. In 1965 the General Assembly amended the statute which was under consideration in *Goldy.* However, the particular statute in effect when the Commissioner denied the applicants' request for a charter to operate an industrial bank was the same one considered by us in *Goldy.* The rationale of *Goldy* quite strongly suggests that the same result should obtain in the instant matter as did in *Goldy,* namely that the action of the trial court directing the Commissioner to grant the application and issue a charter should be affirmed.

The judgment is affirmed.