ROY SOWDERS, BY JIM SOWDERS, HIS NEXT FRIEND *v.*
CLYDE OVERDORF MOTORS, INC.

[No. 771A143. Filed November 21, 1972.]

*Gregory L. Caldwell*, of Tipton, for appellant.

*Stanley M. Herbert*, of Tipton, for appellee.

WHITE, J—Plaintiff-appellant traded for a late model car orally promising to deliver his trade-in the next day, but never did so. Defendant-appellee asked him to return the later model, which he did. He then sued defendant alleging that defendant converted the returned car to his own use. Defendant counterclaimed for the agreed value of the undelivered trade-in. Trial to the court resulted in judgment of $879.21 to defendant on his counterclaim and nothing to plaintiff on his complaint.

At the trial plaintiff's counsel invoked the parol evidence rule in an unsuccessful attempt to exclude all evidence of the trade not disclosed by the written documents signed at the time, especially evidence of plaintiff's oral promises with respect to delivery of the trade-in and payment of an additional $84.21 in cash, which he did not have with him at the time he signed the papers. (Neither the substantive nor procedural aspects of the parol evidence ruling is cited here as error.) When the whole story was told by the testimony of both the plaintiff and the defendant it developed, with almost no disagreement, that plaintiff's trade-in was in a body shop at the time the trade was made. Plaintiff gave defendant the keys and defendant was to pick it up at the body shop. He never did so because the body shop proprietor refused to release it until the repair bill of $321.79 was paid. Plaintiff admitted he had agreed to pay the repair bill and the only reason mentioned in his testimony for failure to do so was that the body shop repairs had never been finished. The body shop proprietor testified, however, that he had made all repairs he agreed to make and for the guaranteed estimated sum.

(What repairs plaintiff contends should have been made that were not made was not brought out.)

In arguing that a conversion was proved, plaintiff relies solely on his own testimony and the inference therefrom most favorable to him. Even that testimony alone, and without resort to defendant's testimony, is susceptible of the very reasonable inference that the return of the automobile to defendant's lot was a *voluntary* compliance by plaintiff with defendant's request to leave the car on the lot. There was never any testimony or contention that any force, threat, coercion, or deception was practiced to induce compliance. Although plaintiff testified he did not "understand the purpose of all this transacting and arrangement that was going on and the conversation and discussion" at the garage office when he returned the car, and that he did not know defendant intended to keep the car until after he gave defendant the keys, he offered no explanation of why he complied with the request. Nor did he ever testify that he protested or that he ever demanded release of the car to him.

Furthermore, there is no evidence that the defendant ever did anything with the automobile except to allow it to sit on his lot.

The trial court was, of course, not required to base his decision on the evidence and inferences most favorable to the plaintiff. He obviously based it on the evidence and inferences most favorable to defendant. So based, the decision was not contrary to law and must be affirmed. *Kourlias* v. *Hawkins* (1972), 153 Ind. App. 411, 287 N.E.2d 764, 32 Ind. Dec. 670; *Vesey* v. *Hillman* (1972), 151 Ind. App. 388, 280 N.E.2d 88, 29 Ind. Dec. 655; *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N.E.2d 669.

With respect to the judgment on the counterclaim, plaintiff's motion to correct errors asserts that the damages are excessive and not supported by the evidence and that the decision is contrary to law. The memorandum appended to the motion makes only this mention of the counterclaim: "The evidence

presented by the defendant in no way supports his claim for damages against the plaintiff as awarded by the Court and any damages that said defendant may be entitled to are no more than a set-off against the damages claimed by the plaintiff."

Plaintiff attempts here to make several arguments concerning the counterclaim which were not raised at the trial and quite obviously are not preserved by the motion to correct errors. We deem it necessary to discuss only the right of the defendant to claim damages, the amount of the damages, and the form of the judgment.

Plaintiff cites authority[1] under the rules of code pleading to the effect that a counterclaim for breach of contract cannot be pleaded in an action for conversion. The basis of that authority has been abrogated by the new rules, particularly Trial Rule 13(B): "A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject-matter of the opposing party's claim." As the Civil Code Study Commission Comments state, "[a]ll restrictions on the right to plead a counterclaim have been removed."[2]

Plaintiff contends that since the written contract between plaintiff and defendant was assigned to the bank defendant had no further interest in it. Although the transcript of the trial proceedings indicates the court and the parties had the written contract before them during the trial and treated it as an undisputed item of evidence, it is not a part of the record before us. The oral evidence before us indicates, however, the trade-in was a part of the down payment which was to be retained by the defendant-dealer and that only the deferred payments were assigned to the bank. At any rate, the plaintiff, as appellant with the burden of demonstrating reversible error, has failed to show us that the evidence most favorable to defendant is insufficient to support a finding that

1. *Boil et al.* v. *Simms* (1877), 60 Ind. 162; *Block* v. *Swango et al.* (1894), 10 Ind. App. 600, 38 N.E. 55.
2. 2 Harvey, INDIANA PRACTICE 10.

defendant was damaged by plaintiff's failure to deliver the trade-in and to pay the balance of the cash down payment.

As to the amount of the damage, rather than the right to damages, we would have been receptive to an argument that the proper measure was the body shop repair bill plus the unpaid cash of $84.21, a total of $406.00. Plaintiff, however, has not made that argument. He has not attempted to summarize or quote the evidence of damages most favorable to defendant but has characterized it as "so thoroughly intermingled with subterfuge that it is virtually impossible to discern just what the defendant is trying to prove, let alone what he has actually proven with the result that the damages assessed by the trial court are excessive in relation to whatever proof is ascertainable and the judgment assessing those damages is most certainly not supported by sufficient evidence." Additionally plaintiff points to Clyde Overdorf's answer to the question on cross-examination concerning how he arrived at the prayer of the counterclaim ($954.21). The answer was:

"I don't have that with me here as to where I arrived at that figure. I think that that has been filed."

However, we note from the transcript that on direct examination, he answered affirmatively, a leading question to the effect that this figure was the sum of the value of the trade-in ($795.00) as of the date of the trade, plus the cash down payment $159.21, including sales tax.

Defendant has likewise said as little in justification of the damage award as has plaintiff in its condemnation. Defendant merely notes the figure is the sum of the value of the trade-in plus the unpaid portion of the cash down payment. No attempt has been made to explain why he is entitled to the full value of the trade-in when he could have obtained its possession by paying the repair bill of $321.79. (The certificate of title had already been assigned to him and he had paid the bank the amount of its lien.)

While we are loath to cast ourselves as plaintiff's advocates

it seems so clear to us that plaintiff's breach was only his failure to pay the body shop $321.79 and to pay defendant an additional $84.21, a total of $406.00, that we cannot approve a judgment of $879.21.

We also take note of the form of the so-called judgment:

"This matter having been under advisement the court now finds that the plaintiff take nothing by his amended complaint; the court further finds that defendant Clyde Overdorf Motors, Inc. is entitled to recover the sum of $879.21 from plaintiffs, and each of them. Costs taxed to the plaintiff."

While no one has suggested it, the foregoing is merely a "finding" and no more purports to be a judgment than does a jury's verdict. Informality is, of course, the mode of the times, but our new rules still retain the distinction between findings, decisions or determinations, and judgments. "In the case of issues tried upon the facts without a jury . . . the court shall determine the facts and judgment shall be entered thereon pursuant to Rule 58."[3] ". . . [U]pon a decision announced, the court shall promptly prepare and sign the judgment, and the clerk shall thereupon enter it. . . . The judge failing promptly to cause judgment to be prepared, signed and entered as provided herein may be compelled to do so by mandate."[4]

The plaintiff has, however, complained of the plural, "plaintiffs," in the so-called judgment "that defendant . . . is entitled to recover the sum of $879.21 from plaintiffs, and each of them." In response, defendant concedes that "[i]f there is only one plaintiff, then the judgment is against that plaintiff, and the words 'each of them' is merely harmless surplusage." Defendant has made no attempt to show that there are two plaintiffs. It is quite apparent that the only plaintiff

3. TR. 52(A).
4. TR. 58.

is Roy Sowders and that James Sowders is merely his next friend.[5]

The decision of the trial court that plaintiff take nothing by his complaint is affirmed and the trial court is directed to enter judgment accordingly.

The decision of the trial court that defendant is entitled to recover damages from plaintiff Roy Sowders is affirmed, but the decision that the amount of the recovery should be $879.21 is reversed and the trial court is directed to enter judgment that the defendant, Clyde Overdorf Motors, Inc., have and recover of and from the plaintiff the sum of $406.00 and costs.

AFFIRMED in part; REVERSED in part.

Buchanan, P.J., and Sullivan, J., concur.

NOTE.—Reported at 289 N.E.2d 332.

---

5. Roy was 19 years of age at the time he made the trade and 20 at the time of trial. Jim Sowders is his father. Jim signed the sales contract with Roy. The counterclaim (denominated "Cross Complaint") "complains of the plaintiff, Roy Sowders and Jim Sowders, his next friend" and "prays . . . for judgment . . . against the cross-defendants. . . ." The record brought up (the praecipe specified only certain items) contains no indication that any steps were taken to make Jim Sowders a "cross-defendant" by service of summons on him or otherwise.