STATE OF INDIANA; DEPARTMENT OF NATURAL RESOURCES; BUREAU OF LAND, FOREST AND WILDLIFE RESOURCES; BRUCE HAMMOND, ASSISTANT SUPERVISOR, DIVISION OF STATE PARKS; RODNEY HERVEY, LIFE GUARD *v.* JOSEPH A. BLATT, DIRECTOR, DIVISION OF STATE PARKS, DEPARTMENT OF NATURAL RESOURCES; EUGENE KNOY, SUPERINTENDENT, RICHARD LIEBER, STATE PARK.

[No. 1-174A2. Filed July 31, 1975. Rehearing denied September 11, 1975. Transfer denied March 9, 1976.]

*Theodore L. Sendak,* Attorney General, *Robert E. Spear,* Deputy Attorney General, for appellants.

*F. Boyd Hovde, Earl Townsend, Jr., Townsend, Hovde & Townsend,* of Indianapolis, *Peter L. Obremskey, Parr, Richey, Obremskey, Pedersen & Morton,* of counsel, of Lebanon, for appellees.

LOWDERMILK, J.—This appeal comes to us in an action wherein Doyle Lincoln Collier (Collier), plaintiff-appellee, recovered a judgment against defendants-appellants, State of Indiana, et al.[1] in the sum of $700,000.00 for personal injuries sustained by Collier while swimming and diving at Hulman Beach located in the Richard Lieber State Park near Cloverdale.

## FACTS:

On September 4, 1966, Collier, a 22 year old male, was swimming at Hulman Beach in Richard Lieber State Park, which was owned at that time by the United States Army Corps of Engineers and leased to the State of Indiana. On that day Collier performed a dive called a "suicide suzy" which is a dive used to produce tremendous splashes, and in so doing was severely injured. A "suicide suzy" may be described as a dive where the diver initially dives "spread eagle" and then just before hitting the water, tucks into a ball and on striking the water creates a huge splash. Collier's injury stemmed from his colliding with a surfboard at the end of his dive just before he struck the water. The surfboard was occupied by a life guard (defendant Hervey) who was on duty for the State and who had propelled the surfboard directly into the path of Collier's dive. Collier testified he walked out on the diving board before performing his last dive to make sure that the previous diver had cleared the diving area and that no swimmers were in the area.

---

1. We shall refer to the defendants jointly, where possible, as "State".

At this time he noticed that Hervey was sitting on the surfboard some fifteen to sixteen feet off the end of the diving board. Collier then turned around, took three to three and one-half steps and again turned around and took the same number of steps to the end of the diving board where he took a couple of springs on the board and went into the air to perform his dive. He went "spread eagle" and looked down. He saw that Hervey had propelled the surfboard into the path of his dive and the collision occurred between Collier and the surfboard.

Hervey testified he was paddling backward and did not see Collier in the air except just before impact.

Collier's injuries, the extent of which are not in issue, were extremely severe. Suffice it to say that he was rendered quadruplegic, with complete paralysis from his neck down. He has now recovered to the point that the paralysis is from the teats down. One doctor described Collier's injury as the most severe injury a human being can sustain without being killed. Collier indicated that he had tried unsuccessfully to kill himself at least three times since the accident but was physically unable so to do.

## ISSUES

The issues here presented by State's brief are:

1.  Whether the trial court erred as a matter of law in granting Collier's motion to reconsider on January 16, 1970, and setting aside the final judgment entered on behalf of defendants-appellants (State) on March 25, 1968.

2.  Whether Collier incurred the risk as a matter of law.

3.  Whether Collier was guilty of contributory negligence as a matter of law.

4.  Whether the damages were excessive.

## DISCUSSION

Issue One—Did the court have jurisdiction to grant plaintiff's motion to reconsider on January 16, 1970, and set aside

a final judgment entered on behalf of the State on March 25, 1968?

Defendant's primary issue on appeal concerns whether the trial court lacked jurisdiction herein for the reason that it sustained defendant's demurrer to plaintiff's original complaint on February 29, 1968, and plaintiff failed to appeal.

Resolution of this issue necessitates inspection of the trial court's entries concerning this cause. They read, in pertinent part, as follows:

"6/27/67   Complaint for personal injuries filed by Collier. 2/9/68   Defendants State of Indiana and Department of Natural Resources files demurrer to Complaint: (H.I.).

2/29/68   Demurrer filed to complaint sustained as to all except Rodney Hervey, and plaintiff is ruled to plead over as to said defendants on or before March 15, 1968, or stand on demurrer.

3/25/68   Plaintiff having failed to plead over as to all defendants except Hervey, elects to stand on ruling on demurrer, and court now finds against plaintiff as to following defendants: State of Indiana; Department of Natural Resources; Bureau of Land, Forest and Wildlife Resources; Joseph A. Blatt, Director, Division of State Parks, Department of Natural Resources.

1/16/70   Plaintiff files motion for court to reconsider ruling sustaining demurrer to complaint filed by all governmental units: (H.I.). Ruling on demurrer having been based on immunity, motion sustained and having reconsidered, now finds that demurrer should be overruled. Court therefore now sets aside finding in favor of defendants entered herein on March 25, 1968, and overrules said defendant's demurrer to complaint and defendants are ruled to answer.

3/9/70   Defendant State of Indiana, et al., files motion to reconsider ruling which set aside finding and reinstituted said defendants as party defendants: (H.I.). Motion assigned for oral argument on April 9, 1970, at 1:00 P.M.

5/22/70   Parties have submitted their briefs, and counterbriefs and court having examined same, and being advised, now overrules the defendant's motion to change ruling on reconsideration which ruling set aside finding for the same

defendants and reinstituted said cause as against all defendants."[2]

Defendant's argument is that the entry of March 25, 1968, *supra,* is a final judgment from which Collier did not appeal. They therefore submit that the entry of January 16, 1970, *supra,* which reopened the case was error for the reason that the trial court was without jurisdiction. Collier however, points out that the entry of March 25, 1968 was not a final judgment but, rather, a mere finding upon which a final judgment was never rendered. Collier argues that the defendants had the right to request judgment upon the finding, but never did so. Collier therefore maintains that the trial court was correct in reopening the cause.

Inasmuch as defendant's entire argument under this issue is premised upon the belief that the March 25, 1968 entry was a final judgment, resolution of that question is essential and dispositive.

By applicable statute, to be a binding order,

"The judgment must be entered in the order book and specify clearly the relief granted or other determination of the action." Ind. Ann. Stat. § 2-2517 (Burns 1968[3] Replacement)

Here, appellants have failed to show any order book entries. All that is presented in the transcript is the docket sheet entries of the court. Further, it cannot be disputed that the docket sheet entry of March 25, 1968, *supra,* fails to "specify clearly the relief granted or other determination of the action." As appellee points out, the language of the March 25, 1968,

---

2. It should be noted that these entries were docket sheet entries and that the record does not contain any order book entries whatsoever. The docket sheet entries do have marked the order book and page number at which the record has apparently been copied from the docket sheet on the order book and has been certified by the clerk of the court as a true and correct copy of the record. Further, "the absence of an order book entry is correctable by a *nunc pro tunc* entry which, when made, takes effect as of the time of the original judgment." *State* v. *Bridenhager* (1971), 257 Ind. 544, 276 N.E.2d 843.

3. This statute was repealed by Acts 1969 and present provisions invoked by Ind. Rules of Procedure, Trial Rule 58, Special Pamphlet. Burns § 2-2517 was in full force and effect on March 25, 1968, when the trial court entered its order of that date as aforesaid.

entry doesn't grant any relief or in any way determine the action. Rather, it merely constitutes a finding against plaintiff, not a judgment.

Had the entry been a final judgment the trial court was without jurisdiction to modify the judgment after (1) 90 days had elapsed or (2) the term of the court in which the judgment was entered had ended.

In *Wadkins* v. *Thornton* (1972), 151 Ind. App. 380, 279 N.E.2d 849, this court discussed the old rule that a court was powerless in a new term to correct or amend judgments rendered in a previous term and went on to say that this state of affairs was changed in 1967 when the distinction between term time and vacation time in all courts of the State of Indiana was abolished by the enactment of IC 1971, 33-1-6-1, Ind. Ann. Stat. § 4-6310 (Burns 1968). Said statute extended the terms for all courts to the calendar year. The court stated further that IC 1971, 31-1-6-3, Ind. Ann. Stat. § 4-6312 (Burns 1968) had limited the power the court possesses over its judgment to a period of 90 days after the judgment is rendered. The court further said:

> "The term 'judgment' as used pursuant to Rule TR. 60 is defined by Rule TR. 54(A):
>
> '(A) Definition—form. "Judgment" as used in these rules includes a decree and *any* order from which an appeal lies.' (Emphasis supplied.)
>
> An appeal lies from a decree overruling a motion to correct errors. Consequently, such a decree is a judgement within the framework of Rule TR. 60 and the *Neal, Hoffman,* and *Decker,* cases, *supra.*

\* \* \*

The nature of the judicial act in rendering judgment was recently brought into focus by Justice Prentice in *State* v. *Bridenhager,* (1971), 257 Ind. 544, 276 N.E.2d 843:

> "\* \* \* for many purposes, a judgment, until entered, is not complete, perfect and effective until this is done; *it, nevertheless, is effective between the parties from the time of rendition.* (Emphasis supplied.)
>
> "\* \* \* rendition of the judgment is the act of the judge, judicial, but the entry thereof the act of the clerk, minis-

terial, and the judge's signature is likewise a ministerial attestation to the correctness of the clerk's transcription of a judgment *complete in itself when pronounced by the judge.* * * *" (Emphasis ours) *Bailer* v. *Dowd* (1942) 219 Ind. 624, 627, 40 N.E.2d 325, 326.' " 279 N.E.2d at 852.

The case of *Fairwoods Bluffs Conservancy District* v. *Imel* (1970), 146 Ind. App. 352, 255 N.E.2d 674, was one where a ruling sustaining a plea in bar and assessing costs against a party was determined not to be a judgment of any kind. This court said:

> "Our holding in this regard is entirely consistent with the obvious intent of the trial court in making such ruling. Aside from the authorities hereinabove set forth, where the language used by a trial court in an order book entry is such as to permit conflicting inferences with regard to the effect of such language it is appropriate in a construction of the entry to inquire whether that entry was intended to terminate the case or some definite and severable portion thereof. See *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N.E.2d 669, and *Fender* v. *Herald-Times, Inc.* (1969), 145 Ind. App. 575, 251 N.E.2d 843, defining the term 'final judgment'.

> \* \* \*

> ". . . Therefore, the fact that the court, on its own motion, after the start of the April Term, made the clarifying entry knowing full well that a *judgment* could not be substantially changed after the start of a new term, is virtually conclusive of the court's intention. . . ." 146 Ind. App. at pp. 366 and 367.

In *Sowders* v. *Clyde Overdorf Motors, Inc.* (1972), 154 Ind. App. 123, 289 N.E.2d 332, the court discussed the form of the "so-called judgment" as follows:

> " 'This matter having been under advisement the court now finds that the plaintiff take nothing by his amended complaint; the court further finds that defendant Clyde Overdorf Motors, Inc. is entitled to recover the sum of $879.21 from plaintiffs, and each of them. Costs taxed to the plaintiff.'

> While no one has suggested it, the foregoing is merely a 'finding' and no more purports to be a judgment than does a jury's verdict. Informality is, of course, the mode of the times, but our new rules still retain the distinction between findings, decisions or determinations, and judgments. 'In the case of issues tried upon the facts without

a jury . . . the court shall determine the facts and judgment shall be entered thereon pursuant to Rule 58.' '. . . [U]pon a decision announced, the court shall promptly prepare and sign the judgment, and the clerk shall thereupon enter it. . . . The judge failing promptly to cause judgment to be prepared, signed and entered as provided herein may be compelled to do so by mandate.' " 289 N.E.2d 335.

See, also, *James* v. *Lake Erie & Western RR Co.* (1895), 144 Ind. 630; *Williams* v. *Williams, Admr.* (1939), 216 Ind. 110, 23 N.E.2d 428; *Cochran* v. *Sloan, Auditor* (1934), 99 Ind. App. 408, 410, 192 N.E. 772.

In *Farley* v. *Farley* (1973), 157 Ind. App. 385, 300 N.E.2d 375, this court, in speaking of judgments said:

"The general rule is that recitals in a decree are usual and proper, but the rights of the parties are adjudged not by these recitals but solely by the decretal portion of the decree, i.e., the judgment. *See Sowders* v. *Clyde Overdorf Motors, Inc.* (1972), [154 Ind. App. 123], 289 N.E.2d 332; 1 Freeman on Judgments (5th Ed. 1925) § 3, p. 6. . . ." 300 N.E.2d at 380.

Judge Groover made the entries of February 29, 1968, and March 25, 1968, *supra.* The record of March 25, 1968, shows that the court "now finds against plaintiff as to the following defendants . . ." The same trial judge (Groover) made the record of January 16, 1970, reconsidered his record of March 25, 1968, and overruled defendants' demurrer to the complaint showing that the ruling of March 25, 1968, had been "based on immunity." This record is most indicative that the trial judge had not intended his record of March 25, 1968, to show anything more than a finding and that no judgment was entered.

We now hold that the record of March 25, 1968, was not a final judgment.

Issues Two and Three—Issue two is whether Collier incurred the risk as a matter of law and issue three is whether Collier was guilty of contributory negligence as a matter of law and we will group them and treat them as one, pursuant to Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

The State argues that Collier incurred the risk as a matter of law and supports its argument by the case of *Christmas* v. *Christmas* (1974), 159 Ind. App. 193, 305 N.E.2d 893.

The facts in the case at bar are distinguishable from those in the *Christmas* case and we determine that the *Christmas* case is not determinative here. Incurred risk and contributory negligence are questions of fact for the jury where the facts are in dispute or where reasonable men could fairly draw different inferences from undisputed facts.

In *Larkins* v. *Kohlmeyer* (1951), 229 Ind. 391, 98 N.E.2d 896, our Supreme Court said:

". . . The question of contributory negligence is ordinarily one for the jury. It is always so where the facts are in dispute, or reasonable men could fairly draw different inferences from undisputed facts. . . ." 229 Ind. 395.

In *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N.E.2d 629, our Supreme Court, in discussing whether the finding was not sustained by sufficient evidence and was contrary to law, said:

". . . If the facts are in dispute, or if reasonable men may draw different conclusions from undisputed facts, the question of negligence is one for the jury; but if the facts are not in dispute, or if the facts most favorable to the proponent, together with all reasonable and logical inference that may be drawn therefrom be assumed as true, and reasonable men could draw only one inference from such assumed facts and inferences, then the question of negligence becomes one of law for the court. . . ." 227 Ind. at 461.

The case of *Rouch* v. *Bisig* (1970), 147 Ind. App. 142, 258 N.E.2d 883, is a case where a youth dived from a pier into shallow water and struck the bottom, thereby injuring himself. Appellee contended that the plaintiff-appellant was guilty of contributory negligence and incurred risk as a matter of law, and the court considered the two together, stating:

". . . Strictly speaking 'assumed risk' is a separate affirmative defense upon contract while incurred risk is a species of contributory negligence in Indiana. . . ."

The court further said:

"Diving from their pier was dangerous. However, the fact that such act was dangerous does not *as a matter of law* legally result in the conclusion that such act was negligent. *Cheek* v. *Jordan,* 131 Ind. App. 127, 169 N.E.2d 608 (1960)." 147 Ind. App. at 151, 152. See also, *Baker* v. *Fisher* (1972), 153 Ind. App. 581, 288 N.E.2d 263.

The evidence was that Collier walked to the end of the diving board and looked the situation beneath him over and saw Hervey sitting on the surfboard fifteen to sixteen feet off the end of the diving board and walked back on the diving board and then returned to the end thereof and made his dive, while in the meantime Hervey had, without looking, paddled the surfboard backward into a position where a diver might be expected to strike the same if he went off the board. Certainly, reasonably men could fairly draw different inferences from the undisputed facts in this case. *Larkins* v. *Kohlmeyer, supra.* Collier, having surveyed the area into which he was going to dive and having seen Hervey at a safe distance from the diving board, had the right to assume that Hervey, a life guard, would exercise reasonable care so as not to propel the surfboard and himself into the path of the diver.

The State had the burden of proof of both contributory negligence and incurred risk. Ind. Rules of Procedure, Trial Rule 8(C). An appeal from a negative finding on those issues is an appeal from a negative judgment, bringing forth the standard of review of *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N.E.2d 669. Applying that standard, the State must fail on its contentions raised by issues two and three.

Issue Four—This issue is that the damages awarded were excessive.

The State argues that a $700,000 judgment is excessive, was contrary to law and was not supported by sufficient evidence.

The test for such determination was concisely stated in the

case of *Richmond Gas Corporation* v. *Reeves* (1973), 158 Ind. App. 338, 302 N.E.2d 795, 815:

". . . The damages therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line, for they have not standards by which to ascertain the excess."

Considering the severity of the injuries sustained by Collier, the loss of wages and his chosen vocation as a carpenter, and his life expectancy, it is our opinion that the award of $700,000 as a result of the injuries proximately resulting from the State's negligence, was not excessive.

Judgment affirmed.

Robertson, C.J. and Hoffman, J., concur.

NOTE.—Reported at 331 N.E.2d 784.