**WILMINGTON SAVINGS FUND SOCIETY,**
**Plaintiff,**

v.

**John W. GREEN, State Bank Commissioner**
**of the State of Delaware, Defendant.**

Superior Court of Delaware,
New Castle.

Dec. 19, 1972.

---

———◆———

George Tyler Coulson, Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff.

James T. Perry, Deputy Atty. Gen., Dept. of Justice, Wilmington, for defendant.

## OPINION

O'HARA, Judge.

This matter comes before this Court on appeal by Wilmington Savings Fund Society ("WSFS") from a decision of the defendant, the State Bank Commissioner ("Commissioner") denying WSFS a certificate of authority to open a branch office at University Plaza, Newark, Delaware.

On October 13, 1970, WSFS applied for the certificate in question. On November 12, 1970, the Bank of Delaware filed an objection to the application on the grounds that WSFS intended to offer checking account services as of January 2, 1971. The objection of the Bank of Delaware was the only objection filed to granting of the application. As a result of Bank of Delaware's objection, a hearing was held on March 29, 1971.[1]

WSFS is a mutual savings fund society in operation in the State of Delaware since 1832. At the time of the application here involved it had a main office in Wilmington, Delaware and eight branch offices, six of which were in New Castle County. WSFS by law is permitted to pay, on time and savings deposits, interest that is greater than interest which can be paid on such deposits in the regular commercial banks, such as the Bank of Delaware. Since 1931 WSFS has had authority to maintain checking accounts but had not determined to make this available to its general clientele until 1970.

At the time of its application plaintiff was a sizable and successful banking insti-

---

[1]. A rather complete record was made at the hearing before the Commissioner, which record has been made a part of the record in this Court on appeal. The issues presented by this appeal are to be determined upon this record by agreement of the parties but without decision by this Court as to whether or not a trial de novo is required in such appeals. Cf. Wilmington Savings Fund Society v. Green, State Bank Commissioner of State of Delaware, 300 A.2d 225 (Del.Super. 1972—opinion of Judge George R. Wright dated July 19, 1972—Kent County).

tution with assets in excess of $300,000,000 and surplus in excess of $26,000,000, had deposits in excess of $269,000,000 and accounts considerably in excess of $100,000. The uncontradicted testimony presented before the Commissioner on behalf of plaintiff indicated that reasonable projections for the University Plaza branch indicated savings deposits of $1,000,000 per year during the first three years, reaching a break-even point in operation in 1973. By 1973 plaintiff's projected net income after all expenses would be $7,125.00.

It was further indicated in both the application and testimony before the Commissioner that WSFS's decision to apply for a branch office in the University Plaza was based substantially upon an analysis of the potential for this developing area and a market feasibility study conducted by the Urban Affairs Division of the University of Delaware prepared by Dr. Francis Tannian.[2]

The Bank of Delaware, objecting to the application, presented no contradictory evidence to the conclusions reached by the market feasibility study or in contradiction to the testimony of Dr. Tannian. The witnesses presented by the Bank of Delaware primarily presented confirmation of the general rule in banking circles that there should only be one commercial bank to a shopping center.

The findings of the Commissioner read as follows:

"The three branch offices of WSFS now established in the market area are adequate to satisfy the needs, as shown in the WSFS application wherein WSFS has documented impressive penetration. The opening of a fourth branch by WSFS at this time, at University Plaza, would result in an unnecessary saturation. It is clearly established that

WSFS has not proved necessity for opening the proposed branch.

The Commissioner has determined that the 31 branch bank offices referred to above (including the three of WSFS), that are now established in the described area, are adequate to serve the public's banking needs.

The Commissioner finds that WSFS has neither proved that the proposed University Plaza Branch office would serve the public convenience not (sic) has it proved that there is good and sufficient reason that WSFS should have the branch office."

Initially this Court must determine criteria to be considered by the Commissioner in determining whether a branch office should be permitted. The current statute, 5 Del.C. § 933(a), which states the law applicable since 1953, reads as follows:

"The application shall state the exact location of the intended branch office and the *necessity* for its opening. The Commissioner shall inquire into the matter and if it deems that the *public convenience* will be served thereby and that there is *good and sufficient reason* that the savings bank of savings society should have the branch office, the Commissioner shall issue its written permission for the opening of the branch office." (Emphasis added).

Both the Bank of Delaware and the Commissioner have argued that an applicant under the provisions of this statute must establish three basic criteria, "necessity", "public convenience", and "good and sufficient reason" for the establishment of the particular branch. WSFS argues that necessity is only required to be established in the application, as seen by a plain reading of the statute, and is not required to be

2. The expertise of Dr. Tannian is demonstrated by the fact that he is Senior Economist in the Urban Affairs Division of the University of Delaware and an Associate Professor of Economics at that University, is the holder of Ph.D. in Economics from the University of Virginia and wrote a Master Thesis on Analysis of Banking in the Boston metropolitan area.

demonstrated in any hearing before the Commissioner.

This Court is of the opinion that both these arguments are somewhat academic. While it is true that the word, "necessity", appears only in the application part of the statute, nevertheless, it would seem a reasonable requirement that the Commissioner, before considering the application, would have to determine whether it was a sufficient application, i. e., that it demonstrated necessity on its face. Furthermore, the Commissioner, himself, in determining what amounted to "public convenience" and "good and sufficient reason" would necessarily be examining into the same information which would be relevant to the determination of "necessity".

More to the point, in examining the findings of the Commissioner is the question of what information the Commissioner actually relied upon in reaching his conclusions. The Commissioner, for example, referred to the "described area" and concluded that in that area the granting of the application would permit the opening of a fourth branch by WSFS resulting in "an unnecessary saturation". The record reflects that the Commissioner in adopting the "described area" was not referring to the geographical area set forth in great detail in the Tannian report but was instead using what would appear, so far as the record is concerned, an arbitrary area which had no apparent logical or compelling basis for its use. In doing this the Commissioner would appear to have largely disregarded the well-documented position of the plaintiff that the growth trends and economic estimates would seem to support both the need of the facilities proposed by WSFS, as well as the economic potential of the area and the WSFS outlet.

Furthermore, the Commissioner's decision determining that the facilities in the community were "adequate to serve the public's banking needs" ignored the fact that what WSFS proposed to offer in the way of savings account interest was higher than was then available in the particular shopping center.

The Commissioner's findings bring into question the basic philosophy lying behind the establishment of banking outlets in the State. The Commissioner says, for example, that the opening of a branch by plaintiff "at this time" would result in "an unnecessary saturation", and that the branch bank offices "now established in the described area, are adequate to serve the public's banking needs". In view of the fact, as the record reflects, that the Commissioner, within two weeks after denying plaintiff's application approved applications for the opening of branch offices for four commercial banks in the same trade area,[3] it follows that there was hardly "an unnecessary saturation" at the time. It would seem more reasonable to suppose that the Commissioner was by his decision attempting to foster monopoly by protecting existent banks from competition. To refuse to permit WSFS to enter the community here where banking needs had been adequately demonstrated would, in effect, grant a monopoly in favor of the existing bank in the community.

There is nothing in the law of this State to indicate that such is the public policy of Delaware, nor would such policy be in accord with the progressive thinking in other jurisdictions. Application of Howard Savings Inst. of Newark v. Howell, 32 N.J. 29, 159 A.2d 113 (1960); Chimney Rock Nat. Bank of Houston v. State Banking Bd., 376 S.W.2d 595 (Texas Ct. of Civil App. 1964); Moran v. Nelson, 322 Mich. 230, 33 N.W.2d 772 (1948); State v. State Securities Commission, 145 Minn. 123, 176 N.W. 759 (1920); Banking Board v. Turner Industrial Bank, 165 Colo. 147, 437 P.2d 531 (1968); Wall v. Fenner, 76 S.D. 252, 76 N.W.2d 722 (1956); Suburban Bank of

---

3. At an earlier stage in these proceedings plaintiff instituted a mandamus action seeking certain information relating to the obtaining of branch banks by other institutions within the same area. This action resulted in production of the desired data which has been made a part of the record in this proceeding.

Kansas City v. Jackson Co. St. Bank, 330 S.W.2d 183 (K.C.Ct. of App.1959).

The Court here is of the opinion that the record amply demonstrates that the plaintiff is knowledgeable and experienced in the successful operation of a mutual savings bank, that the evidence presented before the Commissioner amply demonstrated that there was a need for such facility to meet the public convenience of the area in question, and furthermore, that there were several good and sufficient reasons for its establishment, including the value of competition in the area and the complete services which could be offered to the numerous anticipated mortgage clients of the plaintiff in the area. The criteria set forth in the statute having been clearly met this Court concludes that the denial of the application for a certificate of authority to open a branch office at University Plaza was an abuse of the Commissioner's discretion and should be reversed.

It is so ordered.