**GRENADA BANK, Grenada, Mississippi, and Citizens Bank and Trust Company, Louisville, Mississippi, Plaintiffs,**

v.

**Justin T. WATSON, Acting Comptroller of the Currency of the United States, Defendant.**

No. EC 72–119–S.

United States District Court, N. D. Mississippi, E. D.

June 29, 1973.

Charles D. Fair of Fair & Mayo, J. Hoy Hathorn, Louisville, Miss., Rubel L. Phillips of Perry, Phillips, Crockett & Morrison, Jackson, Miss., for plaintiffs.

William M. Dye, Jr., Asst. U. S. Atty., Oxford, Miss., Harland F. Leathers, Jeffrey S. Rosen, U. S. Dept. of Justice, John E. Shockey, Edward Jiran, Office of the Comptroller of Currency, Washington, D. C., J. A. Covington of Snow, Covington, Temple & Watts, Meridian, Miss., for defendant.

MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action is before the court on defendant's motion for summary judgment and plaintiffs' cross-motion for summary judgment.

The court has received memoranda of authorities and oral argument from the parties and has considered the administrative record submitted to the court by defendant (Comptroller). The court has not considered affidavits filed with the clerk on the issue of the issuance of a preliminary injunction. The court disposes of the action on the motions aforesaid and sustains the motion of defendant, denying the cross-motion of plaintiffs.

The First National Bank of Meridian (First National) filed with the Comptroller of the Currency an application, dated July 21, 1972 for authority to establish a branch bank in the City of Louisville, Winston County, Mississippi. In the course of processing the application, a hearing was afforded the parties at the Memphis, Tennessee office of the Regional Comptroller of the Currency on September 20 and 21, 1972. A notice was duly published in newspapers having a general circulation in Louisville that the First National Bank had filed an application for the establishment of a bank in Louisville. Presently the Louisville banking area is served by two banks, both state chartered institutions, the Citizens Bank and Trust Company and the Louisville Branch of the Grenada Bank. The two banks just mentioned actively protested the granting of permission to First National to establish a branch bank. The applicant and protestants appeared before the Regional Comptroller at his Memphis office at the hearing held on September 20 and 21, 1972, and presented witnesses in support of their respective positions. First National presented five witnesses, all of whom were its officers and employees who had made an investigation of the area which First National proposed to serve through its branch bank.[1] Applicant also offered in evidence 52 exhibits to support the oral testimony presented by it. The protesting banks offered the testimony of 21 witnesses, some of whom were officers, directors and employees of the protesting banks. The other witnesses were civic leaders, industrialists, merchants, and citizens of the area involved. Protestants also offered in evidence 23 exhibits.[1]

The Comptroller received post-hearing briefs with attached exhibits from the interested parties which were made a part of the administrative record. In accordance with the Comptroller's hearing procedure, a public file was established in the Memphis Regional office. This file contains copies of all information submitted with regard to First National's application and was available for inspection and copying by all interested parties.

The record developed by the Comptroller's Regional office was subsequently reviewed by the Regional Administrator in Memphis and members of the Comptroller's senior staff in Washington, D. C., with each reviewing staff member adding his analysis and recommendation to the file. The resulting comprehensive administrative record, including recommendations of staff members, was presented to and considered by the Comptroller in reaching a decision.

The investigation examiner recommended that the application should be granted. In doing so he commented:

Although this proposal is not considered to be a strong application for meeting the needs and convenience of the banking public, approval of the proposal will stimulate the banking competition in the area as well as offer the public another choice in banking institutions. Approval is recommended.

The Regional Administrator reviewed the record and recommended that the application should be granted. He commented:

Louisville, site of the proposed branch, is the centrally located county seat of Winston County which is situated in the N.E. sector of Mississippi, 100 miles N.E. of Jackson, the State Capi-

---

1. Applicant and protestants each offered one expert witness.

tol. Past population growth has been insignificant; however, the local industrial demands for an increased labor supply portends a bright future. The community and county are presently served only by the two protestants; the Citizens Bank and Trust Company operates one outside branch in Noxapater and has received approval for one inside branch office, and the Bank of Louisville operates one inside drive-in facility and a second branch office is approved, but is not yet open for business. The main thrust of protestants' objections is predicated upon the fact that the local financial institutions participated in the past in bringing new industry into the community and that it is manifestly unfair for an out-of-county applicant to seek a share of the resulting increase in banking business. However this argument is unpersuasive. Furthermore, it seems clear that the real purposes of the protests are to main (sic) the near-monopoly situation that now exists with respect to Winston County banking business and to forestall the entry of a National Bank into an area largely controlled by the Grenada system. Proposed branch will enhance competition. Approval is recommended.

The record was reviewed by three members of the Comptroller's Washington staff.

The Director of the Comptroller's Bank Organization Division recommended against approval, while the Chief National Bank Examiner and a Deputy Comptroller recommended approval.

The Director of the Comptroller's Bank Organization Division, summarized his position in the following language:

In my view, opposition has made a strong and impressive case. Prospects and need for this third institution in Winston County (Louisville) have not been demonstrated.

The Chief National Bank Examiner commented:

Louisville is served by a unit bank with deposits of $13.4 million and a $17 million deposits branch of Grenada Bank; Grenada, deposits $103 million. The two banks have interlocking directors with the two savings and loan associations. The local economy, which is good, is shifting from an agricultural to an industrial base. Growth prospects are favorable. Applicant is a progressive, clean bank. Entry of a third bank will stimulate competition.

The Deputy Comptroller of the Currency said:

Louisville is a county seat and encompasses a trade area with a population of some 15,000. The community and county are served by two State banks. Industry provides stable employment for some 3200 and the outlook for industrial expansion is regarded as bright. Introduction of a third competitor would be supported.

After reviewing the record and considering the recommendations of his subordinates, the Comptroller approved the application on November 9, 1972.

The protesting banks filed the complaint in the action sub judice on December 6, 1972, seeking injunctive and declaratory relief to restrain and enjoin the Comptroller from the issuance of a certificate authorizing First National to open the branch bank as authorized by the Comptroller.

The Comptroller has answered the complaint and has submitted to the court the entire administrative record, including a transcript of the reporter's notes of the proceedings held and conducted in Memphis, Tennessee on September 20 and 21, 1972. The record contains approximately 1100 pages, which includes a copy of the reporter's notes.

 The Comptroller's action is subject to judicial review under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701, et seq. See Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 156–158, 90 S.Ct.

827, 25 L.Ed.2d 184 (1970). Plaintiffs have the right to a judicial review by this court, and, if their position is well taken, to the relief sought.

The proper standard for the review by this court is well established. Camp v. Pitts, 138 U.S. 411, 93 S.Ct. 1241, 36 L. Ed.2d 106 (1973); Sterling National Bank of Davie v. Camp, 431 F.2d 514, 516 (5th Cir. 1970), cert. denied, 401 U. S. 925, 91 S.Ct. 879, 27 L.Ed.2d 829 (1971).

In *Pitts* the Supreme Court said:

Unquestionably, the Comptroller's action is subject to judicial review under the Administrative Procedure Act (APA), 5 USC § 701 [5 USCS § 701] . . . . Accordingly, the proper standard for judicial review of the Comptroller's adjudications is not "the substantial evidence" test which is appropriate when reviewing findings made on a hearing record, 5 USC § 706(2)(E) [5 USCS § 706(2)(E)]. . . .

The appropriate standard for review was accordingly whether the Comptroller's adjudication was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," as specified in 5 USC § 706(2)(A) [5 USCS § 706(2)(A)]. 411 U.S. 142, 93 S.Ct. 1244, 36 L.Ed. 2d 110, 111.

■ Accordingly, the standard by which this court must consider the propriety of the Comptroller's action is whether the decision was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law". The court cannot consider the case de novo, nor substitute its judgment for that of the Comptroller. The court is authorized to reverse the action of the Comptroller and enjoin the issuance of the certificate, only if the court finds from the entire record that the action of the Comptroller is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. It is said in 73 C. J.S. Public Administrative Bodies and Procedure, § 209, that "[u]nder the

rules as to the scope of judicial review 'arbitrary or capricious action' of administrative bodies means willful and unreasoning action, without consideration and in disregard of the facts and circumstances of the case. . . ."

The statutory authority with which the Comptroller is clothed to permit banks chartered under the federal system to establish branch banks is contained in 12 U.S.C.A. § 36(c), the pertinent part of which provides:

The conditions upon which a national banking association may retain or establish and operate a branch or branches are the following:

. . . . . .

(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: . . . at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks. . . .

The Mississippi statute on the subject is Miss.Code Ann. § 5226 (1956), which in its pertinent part provides:

Banks may establish branch banks under the restrictions prescribed in this Act, but no branch bank may be established unless the parent bank shall have first obtained from the State Comptroller, the Attorney-General and the Governor, or a majority thereof, *a certificate that the public convenience and necessity will be promoted by the establishment of such branch bank.* (Emphasis supplied).

Plaintiffs contend that the administrative record does not contain substantial evidence that the public convenience and necessity will be promoted by the establishment of the branch bank in question, and that the action of the

Comptroller in approving the application is not, therefore, in accordance with law. In support of this contention, plaintiffs argue and urge upon the court that the Comptroller is bound to recognize and apply Mississippi standards. Stated differently, the argument is that the Comptroller is authorized to approve the establishment of a branch bank by a National bank only in instances where conditions exist which would authorize a state chartered bank to establish a branch bank. Authorities cited by plaintiffs to support this argument include a case originating in this court, where Chief Judge Wm. C. Keady said: "The court agrees that there must be substantial evidence of public convenience and necessity in order to justify the Federal Comptroller in granting a branch bank in Mississippi, and to this extent he is required to follow state law" First National Bank of Southaven v. Camp, No. DC 7145–K (1972). Plaintiffs also cite First Nat. Bank of Logan, Utah v. Walker Bank & Trust Co., 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343, where the Supreme Court said:

It appears clear from this résumé of the legislative history of § 36(c)(1) and (2) that Congress intended to place national and state banks on a basis of "competitive equality" insofar as branch banking was concerned. . . .

The Comptroller argues that Utah's statute "expressly authorizes" state banks to have branches in their home municipalities. He maintains that the restriction, in the subsequent paragraph of the statute limiting branching solely to the taking over of an existing bank, is not applicable to national banks. It is a strange argument that permits one to pick and choose what portion of the law binds him. Indeed, it would fly in the face of the legislative history not to hold that national branch banking is limited to those States the laws of which permit it, and even there "only to the extent that the State laws permit branch banking." . . .

The court is persuaded that the Comptroller's decision in the action sub judice must be weighed and evaluated by the same standard as applies to state chartered institutions. It is only when this is done can the court determine whether the Comptroller's decision is "in accordance with law".

The rule in Mississippi governing judicial review of orders of administrative bodies, including orders of the state banking board, is clearly enunciated in First National Bank of Vicksburg v. Martin, 238 So.2d 856, 857 (Miss.1970), where the court said:

It is well settled in Mississippi that upon appeal from an order of an administrative body, entered in the fulfillment of the specialized functions delegated to it by the legislature, judicial review is narrowly restricted and the action of the Board will not be disturbed unless it was arbitrary or capricious, unlawfully or unconstitutionally violated the rights of others, was beyond its power to make, or was not supported by substantial evidence.

The appropriate standard of review as enunciated in *Pitts, supra,* when applied to the Comptroller's order in the action sub judice, presents the issue of whether the order is "in accordance with law". In order to be "in accordance with law", the order must be supported by substantial evidence to the same extent as would be required in a state bank proceedings.

There is no substantial difference in the opinion of the court, between an adjudication which is arbitrary, capricious, or an abuse of discretion, and one which is not supported by substantial evidence. In either case, the adjudication would be one resulting from "willful and unreasoning action, without consideration and in disregard of the facts and circumstances of the case". 73 C.J.S. Public Administrative Bodies and Procedure, § 209.

Accordingly, the court has examined the administrative record to determine whether the Comptroller's decision is supported by substantial evidence that

734

the public convenience and necessity will be promoted by the establishment of the branch bank in question. It has been noted, however, the court is not authorized to substitute his judgment for that of the Comptroller, but must deny plaintiffs' demand for relief if the administrative record contains substantial evidence, which, when considered along with all the other evidence in the case, supports the Comptroller's decision that a public need exists for the establishment of the branch bank.

■ The granting of permission to open the branch bank does not depend upon a showing that the existing banks are not rendering adequate service to its customers, or that the branch bank will be in a position to render better service to the public than the banks already in existence. See, Planters Bank v. Garrott, 239 Miss. 248, 122 So.2d 256, 269 (1960). The finding must be, however, that there is a public need for the establishment of the branch bank, or that the public convenience and necessity will be promoted by its establishment. This finding must be sustained by substantial evidence in the record.

■ A fair consideration of the evidence submitted to the Comptroller compels the court to find that plaintiffs are now rendering adequate services to their customers. Plaintiffs have supported the efforts of the community to improve its economic position and have been instrumental in the industrial development which has occurred over the past decade. Plaintiffs have proven to be worthwhile citizens of the community in every respect. It is not the purpose, however, of the Mississippi statute to deter competition or foster monopoly, but to guard the public and public interests against imprudent banking. Planters Bank v. Garrott, *supra*. If the public need will be served by the establishment of the branch bank, plaintiffs' commendable activities in community development will not act to defeat its establishment.

The Comptroller's decision is based primarily upon the determination that the establishment of the branch bank will stimulate banking competition in the area to be served by it and will offer the public another choice in banking institutions; also that the area has experienced a strong economic growth in the past, and its potential for such growth in the future is good; thus, justifying additional banking services in the area.

The record reflects that there are two existing savings and loan associations in Louisville. One of the associations, Peoples Savings and Loan Associations (Peoples), is a state chartered association. The other, Inter-City Federal Savings and Loan Association (Inter-City), is chartered by federal authorities.

Three of the seven directors of the Louisville Bank (branch of the Grenada Bank) serve also as directors of Inter-City, each of them holding, in addition to a directorship, an official position. One is the president, the others are vice-presidents. They constitute three members of a seven person board of Inter-City.

Three members of the board of directors of Citizens Bank and Trust Company serve also as members of Peoples' Board of Directors. One of them is a Vice-President of Peoples.

The record shows that no office of a national banking association is operating in Winston County (the county of which Louisville is the county seat) or in a ten-county area surrounding it. The Regional Administrator of National Banks gave some significance to this fact from the standpoint of dual banking competition, on the evident theory that the public's interest is served when a choice can be made in the type of bank to be patronized.

■ The court will not undertake to review in this memorandum all of the evidence contained in the record which supports the Comptroller's decision in regard to the theory that the establishment of the proposed branch bank will enhance competition in the banking field and thus serve a public need and promote the public convenience and necessi-

ty. Suffice it to say, the court is persuaded that the record contains substantial evidence to support this finding.

The effect of the Comptroller's holding is that the economic growth in the area to be served by the proposed branch bank creates a public need which will be served by the establishment of the branch bank.

The statistics for the county contained in the record reflect, inter alia, (1) an employment increase of one hundred and two percent between 1964 and 1971; (2) the lowest rate of unemployment for any county in Mississippi; (3) an increase in effective buying income from 1969–1971 of seventy-five percent; (4) an increase in gross sales of forty-eight percent over a three year period; and (5) an increase in bank deposits of $6.6 million from 1966 to 1970, with the two protesting banks showing an increase of $2,840,000 in the last year alone.

There were other statistics submitted by the two expert witnesses, not necessary to mention here. Each expert professes to be engaged in marketing and economic research. The expert for First National determined that an economic need existed for another banking facility in Louisville. The expert for plaintiffs determined that no such need existed. The opinion of each was based on substantially the same statistical information. The decision reached by one was opposite to the decision reached by the other, because of the manner in which each treated the statistics available to both.

The Comptroller in the action sub judice was the trier of the facts. The credibility, force and weight of the evidence was for his determination.

The court cannot substitute the court's judgment for that of the Comptroller. The decision of the Comptroller cannot be disturbed unless the court can determine from the record that the decision is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law", as specified in 5 U.S.C. § 706(2)(A), Camp v. Pitts, supra; or,

in the action sub judice, since the Comptroller's action in regard to the establishment of branch banks is bound by the Mississippi "substantial evidence rule", First-Citizens Bank and Trust Company v. Camp, 409 F.2d 1086, 1091 (4th Cir. 1968), that the decision is "not supported by substantial evidence". First National Bank of Vicksburg v. Martin, *supra*, 238 So.2d at 857.

After a careful consideration of the entire administrative record, briefs of the parties and argument of counsel, the court is of the opinion and so finds that the approval of the Comptroller of the establishment of the proposed branch bank is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, but on the other hand is supported by substantial evidence. The Comptroller's actions must, therefore, be affirmed and his motion for a summary judgment sustained.

An order will be entered sustaining and granting defendant's motion for a summary judgment and denying plaintiffs' cross-motion for a summary judgment.