## DEPARTMENT OF FINANCIAL INSTITUTIONS *v.* WAYNE BANK AND TRUST COMPANY

[No. 1-1277A303. Filed November 8, 1978. Rehearing denied February 6, 1979. Transfer denied June 27, 1979.]

---

*Theodore L. Sendak,* Attorney General of Indiana, *Terry G. Duga,* Deputy Attorney General, for appellant.

*Randolph P. Wilson, Donald K. Densborn, Krieg, DeVault, Alexander & Capehart,* of Indianapolis, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J. — Defendant-appellant Department of Financial Institutions (Department) appeals from a judgment in favor of plaintiff-appellee Wayne Bank and Trust Company (Wayne Bank), wherein the trial court reversed the determination and order of the Department which held that the establishment of a branch bank in Spring Grove, Indiana by Wayne Bank would not be convenient or advantageous for the public.

## STATEMENT OF FACTS

On December 17, 1975 Wayne Bank submitted to the Department its application to establish a branch bank in Spring Grove, Indiana, a small

suburb of the city of Richmond which is located in eastern Wayne County. Spring Grove was incorporated in 1885 and has retained its corporate and political identity from that date to the present. The population of Spring Grove is approximately 475, whereas the population of Richmond is approximately 45,000 persons.

The main and only office of Wayne Bank is located 16 miles to the west of its proposed Spring Grove branch site in the small western Wayne County community of Cambridge City, Indiana, which has a population of approximately 2,400. There are presently two banks located in Cambridge City, Wayne Bank and Peoples State Bank. Wayne Bank has total deposits of 13 million dollars. It has at least 164 loan customers with $950,000 in existing loans and 264 depositors with $850,000 in existing deposits located in eastern Wayne County with Richmond mailing addresses. Based upon the present number of depositors and conservative future projections the proposed branch in Spring Grove would become profitable within four years. The parties stipulated as to the adequacy of Wayne Bank's capitalization and as to the sufficiency of the investment in real estate with respect to the proposed branch.

The evidence shows that the proposed branch site lies entirely within the incorporated town of Spring Grove. However, one of the exits from the proposed branch site leads directly into a street which lies in the city of Richmond. The only businesses in Spring Grove are a religious bookstore and some doctors' offices.

There are presently two banks with home offices in the city of Richmond, the Second National Bank and the First National Bank. The Second National Bank, with total deposits in excess of 138 million dollars, did not protest Wayne Bank's application. First National appeared at the hearing before the Department and presented evidence as to why the proposed branch in Spring Grove was not needed.

First National presented census figures which showed that between the years 1960 and 1970 neither the population of Richmond, nor that of Spring Grove, had increased. First National also presented evidence which showed that for the year 1974 Wayne County had the highest unemployment rate in the state. First National pointed out that Wayne Bank's low loan-deposit ratio was an indicator that Wayne Bank was either a "smart lender" or an "ultra conservative lender." It was First

National's opinion that since the area which was to be served by Wayne Bank's proposed Spring Grove branch already was being serviced by a branch of First National and a branch of Second National, no new branch was needed in that area.

The evidence presented by Wayne Bank showed that it had a substantial number of banking customers in the Richmond area whose needs were not being serviced. Also, Wayne Bank offered 5% interest on its regular savings plan; both Richmond banks paid only 4%. Wayne Bank proposed to offer longer banking hours throughout the week than the Richmond banks and to offer full banking services for a half-day on Saturday. Neither Richmond bank offered full-service banking on Saturday. There is also evidence that the Wayne Bank would offer lower interest rates on certain kinds of loans than the Richmond banks.

From the evidence the Department determined that the "public convenience and advantage would not be served" by permitting Wayne Bank to build its proposed branch in Spring Grove. Wayne Bank appealed the Department's decision to the Randolph Circuit Court, which, in turn, reviewed the decision of the Department and held that the Department's decision was contrary to law. The Department now brings this appeal from the trial court's denial of the Department's motion to correct errors.

## ISSUES

The issues which have been presented to this court for review are as follows:

1.   Whether the trial court erred by denying the Department's motion to dismiss, which was based upon Wayne Bank's failure to join the First National Bank of Richmond as a party in the appeal to the trial court.

2.   Whether the judgment of the trial court was contrary to law in that the trial court utilized an improper standard of review.

3.   Whether the trial court erred by holding that the words "city or town," contained in the "home office protection" provisions of IC 1971, 28-1-17-1 (Burns Code Ed.), should be strictly construed.

4. Whether the trial court erred by holding that banks have no right to be free of competition, except as provided by statute.

## DISCUSSION AND DECISION

*Issue One*

The Department contends that the trial court erred by denying the Department's motion to dismiss, which was based upon Wayne Bank's failure to join First National as a party in the appeal to the trial court. The Department contends that First National, as a protestant, was a party in the proceedings before the Department and was, therefore, automatically a party to the appeal before the trial court.[1]

Wayne Bank contends, however, that First National was not a party to the administrative proceedings before the Department, but was in reality merely an interested person. IC 1971, 4-1-22-4 (Burns Code Ed.) states:

"Duty of agency to afford opportunity for adjustment of claims. — The agency shall afford all interested persons or parties the right and opportunity for the settlement or adjustment of all claims, controversies and issues, when such persons or parties desire such opportunity."

IC 1971, 4-1-22-4, *supra,* affords interested persons, as well as parties, the opportunity to participate in administrative proceedings. Therefore, the fact that First National appeared as a protestant in the proceedings before the Department does not conclusively show that First National was a party to those proceedings.

In *The Insurance Commissioners of Indiana v. Mutual Medical Insurance, Inc., et al.* (1968), 251 Ind. 296, 241 N.E.2d 56, the Indiana Podiatrists' Association filed a complaint with the Insurance Commissioners alleging that certain policies issued by certain insurance companies illegally excluded compensation for scheduled services, when such

---

1. IC 1971, 4-22-1-14 states in part:

". . . All persons who were parties to the hearing before the agency shall be made parties to the petition for review and shall be notified thereof by the person filing such petition. . . ."

services were performed by podiatrists. The Insurance Commissioners held that, if services, which are scheduled on a policy for compensation by the insurance company, are rendered by a licensed practitioner, including such services as rendered by a podiatrist, such services should be paid for by the insurance company and that any attempt to exclude podiatrists from compensation for rendering the same scheduled services for which physicians are compensated is illegal.

The trial court held that the Insurance Commissioners misinterpreted the meaning of the applicable statutes and that their decision was contrary to law. The Insurance Commissioners and the Podiatrists' Association appealed the decision of the trial court. The appellee insurance companies argued that the Podiatrists' Assocation had no justiciable interest in the controversy, had no legal standing as a party, and had no right to assert errors on review.

The Supreme Court in *Insurance Commissioners of Ind. v. Mutual Medical Insurance, Inc., et al., supra,* at pages 299-301 of 251 Ind., states:

"It is clear that the Indiana Podiatrists' Association, Inc., would have no legal standing to sue on the legality of the restrictive provisions of the appellees' insurance contracts in a court of law. It asserted no other justiciable legally protected right under the insurance policy provisions. Therefore, appellees filed a motion to dismiss in response to the Commissioner's show cause order, alleging that the complainant-appellant was not the real party in interest. We resolve, however, that the Commissioner properly overruled the motion to dismiss the complaint.

The Insurance Law and the Administrative Adjudication Act do not contemplate the proposition that a complaint must be filed by a party with legal standing to invoke the jurisdiction of the Insurance Commissioner to review the legality of insurance policy provisions. Burns' Indiana Statutes, Anno., (1965 Repl.), § 39-4251, and Burns' Indiana Statutes, Anno., (1961 Repl.), § 63-3006. The personal merit, standing or legal interests and motives of a private complainant under these statutory provisions, are immaterial to the jurisdiction of the Insurance Commissioner, if the practice complained of is one in which the public generally has an interest. As a consequence, where a complaint is found to be of public interest generally, the nature of the interest of the complainant is insignificant and the hearing on the issues may stand as if brought by the Commissioner on his own motion.

While the administrative agency has jurisdiction to conduct a hearing on the practices complained of, it does not follow that the complainant becomes a party to the action. The Administrative Adjudication Act, Burns' Indiana Statutes, Anno., (1961 Repl.), § 63-3001, *et seq.*, makes no explicit explanation of who shall qualify as parties to administrative hearings and determinations. Burns' Indiana Statutes, Anno., (1961 Repl.), § 63-3004, states:

'The agency shall afford all *interested* persons or parties the right and opportunity for the settlement or adjustment of all claims, controversies and issues, when such persons or parties desire such opportunity.' (Emphasis added.)

In construing the above statutory requirement, it is important to consider the term 'interested' in light of the nature of many administrative proceedings, which often are adjudications of *public* rather than *private* rights. Legal standing to sue, an element of justiciability, is one of the judiciary's primary guarantees for an adversary proceeding. It is argued that to read into administrative proceedings the exacting requirements of standing would be to ignore both the specific provision which permits the Commissioner to invoke jurisdiction on his own motion and the general philosophy of the Administrative Adjudication Act, which expressly rejects many strict common-law judicial requirements. We note that these factors are persuasive arguments for flexible intervention and amicus curiae practices. They do not, however, lead to the conclusion, as is advocated in the instant case: that one may become a party to a proceeding without legal standing.

Burns' Indiana Statutes, Anno., (1961 Repl.), § 63-3014, sets forth who may seek judicial review of administrative determinations:

'Any party or person aggrieved by any order or determination made by any such agency shall be entitled to a judicial review. . . .'

Justiciability as the primary guarantee of our adversary system and as a protection against collusive suits cannot be, and under the Administrative Act, *supra,* is not, abandoned on appellate review. It is equally clear *all parties* before the Commissioner must be represented on appeal to assure an effective and complete review. Therefore, we are compelled to hold that this State's rules of standing (Burns' Indiana Statutes, Anno., [1967 Repl.], § 2-201, *et seq.,) are applicable* to administrative proceedings; and that the Indiana State Podiatrists' Association, Inc., was not a party to the hearing herein reviewed. As a consequence, appellant-Podiatrists'

Association (whose briefs we have considered only in the nature of an amicus curiae) could not assign errors below or properly file a motion to dismiss. . . ." (Original emphasis)

In the case at bar First National stands in much the same position as did the Podiatrists' Association in *Insurance Commissioners v. Mutual Medical, supra.* First National is an interested person without a justiciable interest in the controversy and is not a party to the proceedings. Therefore, the trial court did not err in denying the Department's motion to dismiss for failure to join First National as a party to the appeal.

*Issue Two*

The Department contends that the judgment of the trial court was contrary to law in that it used an improper standard of review. The standard to be used by a court in reviewing an administrative decision is set forth in *Department of Financial Institutions v. State Bank of Lizton* (1969), 253 Ind. 172, 252 N.E.2d 248, 250, as follows:

"It is to be noted that the trial court, in reviewing the administrative decision, cannot retry the facts 'de novo' and cannot come to its own conclusions as to the merits of the case by weighing the facts and evidence. . . . *The court's only right or scope of review is limited to a consideration of whether or not there is any substantial evidence to support the finding and order of the administrative body.* A court may also determine whether or not the action constitutes an abuse of discretion and is arbitrary or capricious, as revealed by the uncontradicted facts." (Our emphasis)

The Department contends that the trial court exceeded its authority by weighing the evidence when it made its written findings of facts, as required by IC 1971, 4-22-1-18 (Burns Code Ed.). We do not agree. After reviewing the trial court's findings of facts Nos. 6, 9, 10, and 14, to which the Department objects, we hold that the trial court did not weigh the evidence; it merely pointed out that at least four of the Department's factual conclusions were not supported by the evidence. The trial court searched the record and made additional findings of facts based upon uncontroverted and nonconflicting evidence. This, too, was proper. The trial court did not use an improper standard of review in reviewing the Department's decision.

The Department ultimately found that the "public convenience and advantage" would not be served by the establishment of a branch of Wayne Bank in Spring Grove. The Department appears to have based its decision solely upon the fact that the existing Richmond banks were adequately servicing the banking needs of the people in the locality where the branch of Wayne Bank was proposed to be established.

We agree with the trial court's conclusions of law Nos. 8 and 9, which are as follows:

"(8) The mere fact that existing banking facilities are appropriately located in a community, and are providing the usual banking services, even if such services are deemed adequate and sufficient, is not of itself a sufficient basis to deny the establishment or opening of a new bank or branch if the general economy of the area and its reasonable potential are such that there is room for another bank without causing excessive competition and endangering the existing banks and the banking structure at large.

APPLICATION OF HOWARD SAVINGS INST. OF NEWARK V. HOWELL (1960) 32 N.J. 29, 159 A.2d 113, 123, 124 (Statute required that the 'interest of the public' be 'served to advantage' by the establishment of proposed branch bank);

CHIMNEY ROCK NATIONAL BANK OF HOUSTON V. STATE BANK BD. (1964) Texas Civil Appeals, 387 S.W. 2d 595 (Statute required 'public necessity' for new bank);

GOLDY V. GERBER (1962) 151 Colo. 180, 377 P.2d 111 (Statute required that new bank would 'provide the convenience and advantage of the community in which the business of the applicant is to be conducted');

CLERMONT NATIONAL BANK V. CITIZENSBANK NATIONAL ASSOCIATION (D.Ct. S.D. Ohio, 1971) 329 F.Supp. 1331 (Statute required that 'convenience and needs of the public' would be served by proposed branch bank);

\* \* \*

(9) The public need or interest in the new bank or branch is especially strong if the new bank proposes to pay higher interest rates or to offer greater services or advantages than offered by existing banks.

APPLICATION OF HOWARD SAVINGS INST. OF NEWARK V. HOWELL (1940) 32 N.J. 29, 159 A.2d 113, 124 ('The public should always be entitled to increased interest rates and greater services and convenience which proper competition may well bring.');

WILMINGTON SAVINGS FUND SOCIETY V. GREEN (1972) Del., 300 A.2d 227;

GERST V. CAIN (1965) Texas, 388 S.W. 2d 168;

FIRST NATIONAL BANK OF SOUTHAVEN V. CAMP (5th Cir., 1973) 471 F.2d 1322.

Cf. GRENDADA BANK V. WATSON (D.Ct. N.D. Miss. 1973) 361 F.Supp. 728 (holding that granting of application for branch bank did not require proof that existing banks were not rendering adequate service or that new bank would render better service);

See also CLERMONT NATIONAL BANK V. CITIZENBANK NATIONAL ASSOCIATION (D.Ct. S.D. Ohio, 1971) 329 F.Supp. 1331, 1339, 1340 (holding that banking needs of the community in question were 'being fully and adequately met by existing banking facilities' but further holding that competition would still serve the convenience and needs of the public)."

In *Farmers State Bank, LaGrange v. Department of Financial Institutions* (1976), 171 Ind.App. 145, 355 N.E.2d 277, 280 this court stated the following:

"Appellants next contend that the court erred in finding that there was a public necessity for the organization of a new bank. Appellants contend that the evidence shows mere convenience rather than the required public necessity. Public necessity has been defined as a substantial or obvious community need in light of the attendant circumstances. *Gerst v. Nixon* (Tex.1966), 411 S.W.2d 350; *Moran v. Nelson* (1948), 322 Mich. 230, 33 N.W.2d 772. It requires more than mere convenience but less than an absolute or indispensable need. *Gerst v. Nixon, supra; Moran v. Nelson, supra.* However, convenience may be properly considered when supplemented by facts and circumstances persuasive of necessity. *Gerst v. Nixon, supra; Moran v. Nelson, supra.*

The Supreme Court of Michigan, in addressing the requirement of necessity in *Moran v. Nelson, supra,* at 243 of 322 Mich., at 778

of 33 N.W.2d, quoted with approval from *State ex rel. Dybdal v. State Securites Commission* (1920), 145 Minn. 221, 176 N.W. 759, 760, as follows:

'It (the governing statute) does not intend that one or more established banks may keep out another because the banking facilities sufficiently take care of the banking business. Its purpose is not to deter competition or foster monopoly, but to guard the public and public interest against imprudent banking.' " (Original emphasis)

In the case at bar all the evidence points to the fact that the public convenience and advantage would be served by the establishment of a branch of Wayne Bank in Spring Grove. It is stipulated that Wayne Bank is sufficiently capitalized and well-managed. Therefore, there appears to be no threat of introducing imprudent banking practices by permitting Wayne Bank to establish its branch in Spring Grove. The only interest which would be served in excluding a bank which offers higher interest on deposits, lower interest on certain loans, and longer banking hours is that of the Richmond banks, not that of the people in the proposed service area. It is not the purpose of the Department of Financial Institutions to foster monopolistic banking practices but rather to protect the public from imprudent banking practices.

The effect of competition from a proposed bank upon an existing bank should be considered controlling only where the possibility exists that the existing bank would collapse, or its business would be severely damaged by such competition, because such collapse or severe damage would detrimentally affect the public convenience and advantage. Slight losses of business which result from healthy competition are not controlling factors in deciding whether a proposed branch bank should be permitted to be established in an area being serviced by an existing bank. We hold, therefore, that the trial court did not err in reversing the decision of the Department in that such decision was not supported by the evidence and was contrary to law.

*Issue Three*

The Department contends that the trial court erred in holding that the words "city or town," contained in the "home office protection" provisions of IC 1971, 28-1-17-1, *supra,* should be strictly construed.

The Department has waived this argument by its failure to raise this issue in either the administrative proceeding or in the trial court. See *Farmers State Bank, LaGrange v. Department of Financial Institutions, supra,* and *Sowders v. Clyde Overdorf Motors, Inc.* (1972), 154 Ind.App. 123, 289 N.E.2d 332. The Department filed no reply to Wayne Bank's waiver argument on this issue. In that we cannot search the record to reverse, we must deem Wayne Bank's argument to be correct.

*Issue Four*

The Department contends that the trial court erred by holding that banks have no right to be free of competition, except as provided by statute. In its conclusion of law No. 6, the trial court held as follows:

"Competition is the life blood of a free enterprise economic system, and competition serves both the convenience and needs of the public. Banks have no right to be free of competition except as otherwise provided by statute."

To support its conclusion of law No. 6 the trial court cited the following authority. *Gerst v. Cain* (1965), Tex., 388 S.W.2d 168; *First Federal Savings and Loan Association v. Department of Banking* (1972), 188 Neb. 215, 196 N.W.2d 105; *Clermont National Bank v. Citizens National Association* (S.D. Ohio 1971), 329 F.Supp. 1331; and *Hoosier State Bank of Indiana v. Saxon* (N.D. Ind. 1965), 248 F.Supp. 233.

The Department has offered no argument or authority which convinces this court that the trial court's conclusion of law No. 6 is not a correct statement of the law. We, therefore, hold that the trial court did not err in formulating its conclusion of law No. 6.

Judgment affirmed.

Lybrook, P.J. and Robertson, J. concur.

NOTE — Reported at 381 N.E.2d 1100.

## ON PETITION FOR REHEARING

LOWDERMILK, J. — Respondent-appellant Department of Financial Institutions (Department) has petitioned for rehearing on this court's affirmance of the trial court's reversal of the Department's denial of Wayne

Bank and Trust Company's application to establish a branch bank in Spring Grove, Indiana. Our original opinion is *Department of Financial Institutions v. Wayne Bank and Trust Company* (1978), 178 Ind. App. 265, 381 N.E.2d 1100, which was handed down on November 8, 1978.

The Department contends that a conflict exists between the opinion of this court in the case at bar which was handed down on November 8, 1978 and this court's opinion in *Department of Financial Institutions v. Colonial Bank and Trust Company* (1978), 176 Ind.App. 368, 375 N.E.2d 285. In *Colonial Bank* an application to organize a new commercial bank in Zionsville, Indiana, in accordance with IND. CODE 28-1-2-26, was made by Colonial Bank & Trust Company to the Department of Financial Institutions. In *Colonial, supra,* at page 288 of 375 N.E.2d, this court stated the following:

"CONCLUSION — The trial court incorrectly defined 'public necessity' as that term is used in Ind. Code 28-1-2-26.

Public necessity is a substantial or obvious community need in light of attendant circumstances. It is a somewhat nebulous concept which requires more than mere convenience but less than absolute or indispensable need. *Farmers State Bank, LaGrange v. Dept. of Financial Institutions* (1976), 171 Ind.App. 145, 355 N.E.2d 277. See *VIP Limousine Service, Inc. v. Herider-Sinders, Inc.* (1976), 171 Ind.App. 109, 355 N.E.2d 441.

The trial court was mistaken in finding that the Department could rule there was no public necessity only if 'another bank in the designated service area would have tended to seriously injure the existing financial institutions already there, and bring about bank failures.'

Neither Colonial nor this court's research has revealed a single case in which public necessity for the establishment of a new bank was determined solely on whether its creation would endanger an existing financial institution."

In *Wayne Bank, supra,* at pages 1106 and 1107 of 381 N.E.2d, this court stated the following:

"In the case at bar all the evidence points to the fact that the public convenience and advantage would be served by the establishment of a branch of Wayne Bank in Spring Grove. It is stipulated that Wayne Bank is sufficiently capitalized and well-managed.

Therefore, there appears to be no threat of introducing imprudent banking practices by permitting Wayne Bank to establish its branch in Spring Grove. The only interest which would be served in excluding a bank which offers higher interest on deposits, lower interest on certain loans, and longer banking hours is that of the Richmond banks, not that of the people in the proposed service area. It is not the purpose of the Department of Financial Institutions to foster monopolistic banking practices but rather to protect the public from imprudent banking practices.

The effect of competition from a proposed bank upon an existing bank should be considered controlling only where the possibility exists that the existing bank would collapse, or its business would be severely damaged by such competition, because such collapse or severe damage would detrimentally affect the public convenience and advantage. Slight losses of business which result from healthy competition are not controlling factors in deciding whether a proposed branch bank should be permitted to be established in an area being serviced by an existing bank. We hold, therefore, that the trial court did not err in reversing the decision of the Department in that such decision was not supported by the evidence and was contrary to law."

A careful examination of *Colonial Bank, supra,* and *Wayne Bank, supra,* reveals that the two cases are easily distinguishable. In *Colonial Bank* the applicant sought to establish a *new* bank and was, therefore, required by IC 28-1-2-26 to show "public necessity" for a new bank. In *Wayne Bank, supra,* the applicant sought to establish a *branch* bank in another town and was, therefore, required by IND. CODE 28-1-17-1 to show that such branch would subserve "public convenience and advantage."

*Colonial Bank, supra,* carefully outlines the requirements to be considered in determining whether there is a "public necessity" for the establishment of a new commercial bank. Those factors include an array of economic considerations which are based upon current community population and business statistics and future projections in those areas. Many of those same factors, which are used to show "public necessity" for the establishment of a new commercial bank should be considered in determining whether the establishment of a branch bank in a given place would subserve the "public convenience and advantage." It would certainly not be to the public's advantage for even a well capitalized

and well managed bank to establish a branch in an area where there were no people to use it. However, we hold that a showing of "public convenience and advantage" is based upon a less demanding standard than is a showing of "public necessity."

We are of the opinion that the Legislature used separate and distinct terminology to describe the respective standards for establishing a new commercial bank and a branch bank, for the reason that it intended those standards actually to be separate and distinct. The literal meaning of "convenience and advantage" denotes something less compelling than "necessity." Therefore, competition, as a factor in determining whether or not to establish a bank, is less controlling where the standard is one of "convenience and advantage" than where the standard is one of "necessity."

Though less controlling, the effect of competition upon existing banks is not altogether unimportant. When the effect of competition from a proposed branch bank would be to severely damage or even cause the possible collapse of an existing bank, such competition would be a controlling factor in determining whether or not to permit the branch to be established. Such a branch which severely hampered an existing bank would subserve neither the public convenience nor advantage. However, where the effect of competition from a proposed branch bank would be to cause slight losses in business for an existing bank, such competition would not be a controlling factor. Such competition would be advantageous to the public by preventing existing banks from maintaining monopolistic banking practices and by introducing additional banking services into the area.

IC 28-1-17-1, *supra,* lists six requirements that must be met before a branch can be established: (1) the proposed branch must be within the county in which the main office is located; (2) the applicant must have sufficient capital to support the proposed branch; (3) the proposed branch must subserve "public convenience and advantage;" (4) the proposed branch will be in a city, town, or community; (5) if such city, town, or community is other than where the main office of the proposed branch is located then the main office of another bank cannot be located therein; and (6) the applicant's investment in real estate, including the branch

office must be within certain prescribed limits. All of these requirements were met by Wayne Bank in the case at bar.

The Department based its denial of Wayne Bank's application to establish a branch bank solely upon its conclusion that such a branch at that location would not subserve the public convenience and advantage. No finding was made by the Department that the establishment of a branch by Wayne Bank in Spring Grove would have violated the home bank protection provisions of IC 28-1-17-1. In fact the Department specifically found that Spring Grove was an incorporated town, separate from the city of Richmond. Therefore, even if the Department had not waived its allegation of error concerning the violation of the home bank protection provision by failing to place such in issue in the administrative hearing, and by failing to answer in a reply brief Wayne Bank's contention that the issue was waived thereby, we would nevertheless hold that Spring Grove's incorporation as a town satisfies the "town" requirements of IC 28-1-17-1.

In reviewing the decision of an administrative agency the trial court need only look at the substantial, reliable, and probative evidence.[1] For evidence to be substantial, reliable, and probative it must be more than mere speculation. Evidence composed of mere guess, conjecture, surmise, possibility or suspicion is insubstantial and insufficient to support a decision by a court or agency. See *Sparks v. Baldwin* (1965), 137 Ind.App. 64, 205 N.E.2d 173, and *G.B. v. S.J.H.* (1975), 167 Ind.App. 175, 338 N.E.2d 315.

In light of all the *substantial* evidence which was presented in the case at bar the only reasonable conclusion which can be reached is that the public convenience and advantage, not necessarily the public necessity, would be subserved by permitting Wayne Bank to establish a branch in Spring Grove. Therefore, the Department's petition for rehearing is hereby denied.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 385 N.E.2d 482.

---

1. See IND. CODE 4-22-1-18.