**DEPARTMENT OF FINANCIAL INSTITUTIONS, Respondent-Appellant,**

v.

**WAYNE BANK AND TRUST COMPANY, Petitioner-Appellee.**

No. 1–1277A303.

Court of Appeals of Indiana, First District.

Feb. 6, 1979.

Theodore L. Sendak, Atty. Gen., Terry G. Duga, Deputy Atty. Gen., Indianapolis, for respondent-appellant.

Randolph P. Wilson, Donald K. Densborn, Krieg, DeVault, Alexander & Capehart, Indianapolis, David A. Feemster, Feemster & Feemster, Cambridge City, for petitioner-appellee.

## ON PETITION FOR REHEARING

LOWDERMILK, Judge.

Respondent-appellant Department of Financial Institutions (Department) has petitioned for rehearing on this court's affirmance of the trial court's reversal of the Department's denial of Wayne Bank and Trust Company's application to establish a branch bank in Spring Grove, Indiana. Our original opinion is *Department of Financial Institutions v. Wayne Bank and Trust Company*, (1978) Ind.App., 381 N.E.2d 1100, which was handed down on November 8, 1978.

The Department contends that a conflict exists between the opinion of this court in the case at bar which was handed down on November 8, 1978 and this court's opinion in *Department of Financial Institutions v. Colonial Bank and Trust Company*, (1978) Ind. App., 375 N.E.2d 285. In *Colonial Bank* an application to organize a new commercial bank in Zionsville, Indiana, in accordance with Ind.Code 28–1–2–26, was made by Colonial Bank & Trust Company to the Department of Financial Institutions. In *Colonial, supra*, at page 288 of 375 N.E.2d, this court stated the following:

> "CONCLUSION—The trial court incorrectly defined 'public necessity' as that term is used in Ind.Code 28–1–2–26.
>
> Public necessity is a substantial or obvious community need in light of attendant

circumstances. It is a somewhat nebulous concept which requires more than mere convenience but less than absolute or indispensable need. *Farmers State Bank, LaGrange v. Dept. of Financial Institutions* (1976), Ind.App., 355 N.E.2d 277. See *VIP Limousine Service, Inc. v. Herider-Sinders, Inc.* (1976), Ind.App., 355 N.E.2d 441.

The trial court was mistaken in finding that the Department could rule there was no public necessity only if 'another bank in the designated service area would have tended to seriously injure the existing financial institutions already there, and bring about bank failures.'

Neither Colonial nor this court's research has revealed a single case in which public necessity for the establishment of a new bank was determined solely on whether its creation would endanger an existing financial institution."

In *Wayne Bank, supra,* at pages 1106 and 1107 of 381 N.E.2d, this court stated the following:

"In the case at bar all the evidence points to the fact that the public convenience and advantage would be served by the establishment of a branch of Wayne Bank in Spring Grove. It is stipulated that Wayne Bank is sufficiently capitalized and well-managed. Therefore, there appears to be no threat of introducing imprudent banking practices by permitting Wayne Bank to establish its branch in Spring Grove. The only interest which would be served in excluding a bank which offers higher interest on deposits, lower interest on certain loans, and longer banking hours is that of the Richmond banks, not that of the people in the proposed service area. It is not the purpose of the Department of Financial Institutions to foster monopolistic banking practices but rather to protect the public from imprudent banking practices.

The effect of competition from a proposed bank upon an existing bank should be considered controlling only where the possibility exists that the existing bank would collapse, or its business would be severely damaged by such competition, because such collapse or severe damage would detrimentally affect the public convenience and advantage. Slight losses of business which result from healthy competition are not controlling factors in deciding whether a proposed branch bank should be permitted to be established in an area being serviced by an existing bank. We hold, therefore, that the trial court did not err in reversing the decision of the Department in that such decision was not supported by the evidence and was contrary to law."

■ A careful examination of *Colonial Bank, supra,* and *Wayne Bank, supra,* reveals that the two cases are easily distinguishable. In *Colonial Bank* the applicant sought to establish a *new* bank and was, therefore, required by IC 28–1–2–26 to show "public necessity" for a new bank. In *Wayne Bank, supra,* the applicant sought to establish a *branch* bank in another town and was, therefore, required by Ind.Code 28–1–17–1 to show that such branch would subserve "public convenience and advantage."

*Colonial Bank, supra,* carefully outlines the requirements to be considered in determining whether there is a "public necessity" for the establishment of a new commercial bank. Those factors include an array of economic considerations which are based upon current community population and business statistics and future projections in those areas. Many of those same factors, which are used to show "public necessity" for the establishment of a new commercial bank should be considered in determining whether the establishment of a branch bank in a given place would subserve the "public convenience and advantage." It would certainly not be to the public's advantage for even a well capitalized and well managed bank to establish a branch in an area where there were no people to use it. However, we hold that a showing of "public convenience and advantage" is based upon a less demanding standard than is a showing of "public necessity."

We are of the opinion that the Legislature used separate and distinct terminology to describe the respective standards for establishing a new commercial bank and a branch bank, for the reason that it intended those standards actually to be separate and distinct. The literal meaning of "convenience and advantage" denotes something less compelling than "necessity." Therefore, competition, as a factor in determining whether or not to establish a bank, is less controlling where the standard is one of "convenience and advantage" than where the standard is one of "necessity."

▮ Though less controlling, the effect of competition upon existing banks is not altogether unimportant. When the effect of competition from a proposed branch bank would be to severely damage or even cause the possible collapse of an existing bank, such competition would be a controlling factor in determining whether or not to permit the branch to be established. Such a branch which severely hampered an existing bank would subserve neither the public convenience nor advantage. However, where the effect of competition from a proposed branch bank would be to cause slight losses in business for an existing bank, such competition would not be a controlling factor. Such competition would be advantageous to the public by preventing existing banks from maintaining monopolistic banking practices and by introducing additional banking services into the area.

IC 28–1–17–1, *supra*, lists six requirements that must be met before a branch can be established: (1) the proposed branch must be within the county in which the main office is located; (2) the applicant must have sufficient capital to support the proposed branch; (3) the proposed branch must subserve "public convenience and advantage;" (4) the proposed branch will be in a city, town, or community; (5) if such city, town, or community is other than where the main office of the proposed branch is located then the main office of another bank cannot be located therein; and (6) the applicant's investment in real estate, including the branch office must be within certain prescribed limits. All of these requirements were met by Wayne Bank in the case at bar.

The Department based its denial of Wayne Bank's application to establish a branch bank solely upon its conclusion that such a branch at that location would not subserve the public convenience and advantage. No finding was made by the Department that the establishment of a branch by Wayne Bank in Spring Grove would have violated the home bank protection provisions of IC 28–1–17–1. In fact the Department specifically found that Spring Grove was an incorporated town, separate from the city of Richmond. Therefore, even if the Department had not waived its allegation of error concerning the violation of the home bank protection provision by failing to place such in issue in the administrative hearing, and by failing to answer in a reply brief Wayne Bank's contention that the issue was waived thereby, we would nevertheless hold that Spring Grove's incorporation as a town satisfies the "town" requirements of IC 28–1–17–1.

▮ In reviewing the decision of an administrative agency the trial court need only look at the substantial, reliable, and probative evidence.[1] For evidence to be substantial, reliable, and probative it must be more than mere speculation. Evidence composed of mere guess, conjecture, surmise, possibility or suspicion is insubstantial and insufficient to support a decision by a court or agency. See *Sparks v. Baldwin*, (1965) 137 Ind.App. 64, 205 N.E.2d 173, and *G.B. v. S.J.H.*, (1975) Ind.App., 338 N.E.2d 315.

▮ In light of all the *substantial* evidence which was presented in the case at bar the only reasonable conclusion which can be reached is that the public convenience and advantage, not necessarily the public necessity, would be subserved by permitting Wayne Bank to establish a branch in Spring Grove. Therefore, the Depart-

1. See Ind.Code 4–22–1–18.

ment's petition for rehearing is hereby denied.

LYBROOK, P. J., and ROBERTSON, J., concur.